UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| SUSAN CARD<br><br>**Plaintiff,**<br><br>V.<br><br>PRINCIPAL LIFE INSURANCE COMPANY,<br><br>**Defendant.** | CIVIL ACTION<br>NO. 5:15-CV-139-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Cross Motions for Summary Judgment, one filed by Plaintiff Susan Card, (DE 68), and the other filed by Defendant Principal Life Insurance Company, (DE 71). For the following reasons, Defendant's Motion is **GRANTED**, and Plaintiff's Motion is **DENIED**.

## I. INTRODUCTION

This dispute arises over disability insurance policies held by Plaintiff Susan Card that were underwritten and administrated by Defendant Principal Life Insurance Company. (DE 1 at 2). On May 17, 2015, Plaintiff filed a complaint this this Court alleging that Defendant breached its disability insurance contracts with Plaintiff by wrongfully denying her claim, both when it was filed in December of 2013 and on appeal.[1] (DE 1). The Complaint further alleges that Plaintiff was denied a full and fair review, due in part to Defendant's operating under an inherent conflict of interest as both the evaluator and payor of claims under Plaintiff's policy. *Id.* at 2 ¶¶ 13–14. This Court has jurisdiction over these claims pursuant to

---

[1] Plaintiff's Amended Complaint, (DE 3), makes no substantive changes and only resolves a clerical error.

1

the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, which provides a mechanism for enforcing insurance policies like Plaintiff's.

Plaintiff Card has now filed a motion for summary judgment, (DE 68), in which she argues entitlement to relief because she believes that medical evidence supports her claim of disability and Principal both ignored relevant evidence and relied on flawed medical records in denying her claims. (DE 68-1). In response, Defendant Principal filed a cross motion for summary judgment, (DE 71), in which it argues that the denial of benefits was not arbitrary and capricious because the decision is supported by substantial evidence in the administrative record. The Court reviews the parties' arguments below.

## II. ANALYSIS

### A. Legal Standards

As a threshold matter, the Court once again takes up the parties' arguments regarding the standard of review applicable in this case. On March 31, 2016, the Court ruled that it would "review Defendant's determination under the 'highly deferential arbitrary-and-capricious standard of review.'" (DE 30 at 6) (quoting *Canada v. Am. Airlines, Inc. Pilot Ret. Ben. Program,* 572 Fed.Appx. 309, 312 (6th Cir. 2014)).

In its previous Order, the Court found that Principal had sufficiently shown that the benefit plan in this case gives Principal authority to determine eligibility for benefits and construe the terms of the plan. (DE 30 at 5) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948 (1989)). The Court was further satisfied that Principal also exercised its delegated authority. *Id.* Nothing in Card's motion for summary judgment undermines this basis for applying the arbitrary and capricious standard of review.

Nonetheless, Card attacks the plan's grant of discretionary authority due to the "exception" process through which Card's employer might have requested that a claim be paid under the plan. (DE 68-1 at 20). Card cites to a portion of deposition testimony by Nancy

Taylor, presumably an employee of Principal, to show that Card's employer may request an "exception" under the plan's terms, which is defined as "any decision that is not consistent with normal plan policy provisions and administrative processes." (DE 68-2 at 6). Card does not cite to a policy provision, nor to any evidence, however, showing that any exception request by Card's employer is automatically granted under the terms of the plan, or that any exception request otherwise usurps the discretionary authority of Principal in any way. And the evidence contained in the Record refutes any such assertion.

The only reference in the Record to the process by which an exception is approved—here, taken from a section of Taylor's deposition supplied to the Court—contemplates an examiner "not[ing] something and tak[ing] it to senior staff . . . to have a discussion about it." *Id.* at 7. In contrast, Principal has provided the sworn statement of Lisa Dickhoff, Assistant Director of Disability Claims for Principal, which states that exceptions are not automatically granted and the exception request in this case would not have been approved. (DE 71-2). Thus the Record does not reflect that the exception process would permit Continuum, rather than Principal, to have final decision-making process under the plan.

Next, Card attempts to relitigate the matter of the plan's grant of discretion to Principal, arguing that the express terms of the plan prohibit such a grant. Although it does not appear to have been argued in Card's original briefing on the applicable standard of review, she now argues that the plan prohibits Principal from being the Named Fiduciary, essentially arguing that Principal had no discretionary authority over the plan. (DE 68-1 at 20-22). Card's argument, however, fails to recognize that a Named Fiduciary, in this case Continuum, may designate other fiduciaries relative to aspects of the plan. *See* 29 U.S.C. § 1102(c). Here, the plan explicitly provides Principal with the "discretion to construe or interpret the provisions of this Group Policy, to determine eligibility for benefits, and to determine the type and extent of benefits . . . ." (DE 18-1 at 23). Principal must also receive proof of loss before benefits may

be paid out under the plan, which may include medical records, examinations, claim forms completed by physicians, and "other proof of loss as required by The Principal." (DE 18-1 at 48-49; DE 18-2 at 7-8).

The Court once again finds that this language tracks that used by the Supreme Court. *See Firestone Tire & Rubber Co.,* 489 U.S. at 115 (applying *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to *determine eligibility for benefits* or to *construe the terms of the plan*") (emphasis added). The Court also again find that the language also tracks prior discretionary clauses approved for arbitrary and capricious review by the Sixth Circuit.[2]

Further, that Principal is both the evaluator and payor of claims under the policy does not alter the standard of review. *See Smith v. Continental Cas. Co.,* 450 F.3d 253, 260 (6th Cir. 2006). Rather, the conflict of interest should be considered a factor in the Court's review of the denial. *Id.* Here, the Court has previously allowed the parties to conduct limited discovery for the purpose of determining how the conflict should impact the Court's review. (*See* DE 30 at 7). With this limited discovery completed, the Court is prepared to review the cross motions for summary judgment, viewing Principle's decision under the arbitrary and capricious standard, with the inherent conflict of interest viewed as a factor in the Court's review of the denial of Card's benefits.

---

[2] "The various cases in which we have concluded that a policy grants an insurer or administrator discretion featured policies containing much more far-reaching discretion clauses. For instance, in *Evans*, the policy stated that the insurer had 'discretionary authority to *determine your eligibility for benefits* and to interpret the terms and provisions of the policy.' 434 F.3d at 875 n.4 (emphasis added). Similarly, in *McCartha v. National City Corp.,* 419 F.3d 437 (6th Cir. 2005), the policy stated that the administrator had the power 'to construe and interpret this Plan…and to decide *all questions of eligibility.*' *Id.* at 442 (emphasis added). *See also Calvert v. Firstar Fin., Inc.,* 409 F.3d 286, 292 (6th Cir. 2005) (plan gave insurer discretion "to construe the terms of th[e] policy and to determine eligibility hereunder.")." *Metropolitan Life Inx. Co. v. Conger,* 474 F.3d 258, 264 n.2 (6th Cir. 2007).

4

**B. The Denial of Card's Benefits**

Under the arbitrary and capricious standard, "a decision will be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence." *Evans v. UnumProvident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006) (quoting *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 520 (6th Cir. 1998)). The review, however, "inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." *Id.* (quoting *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003)). Submitting the denial in this case to such a review, and finding substantial evidence in the Record to support Principle's decision, the Court affirms Principle's determination denying Card benefits.

*i. Exception Procedure*

Card first argues that the exception procedure provided by the plan, which allows Continuum to request a "decision that is not consistent with normal plan policy provisions and administrative processes," warrants judgment in her favor. (*See* DE 68-2 at 6; DE 76 at 12). But, as discussed above, the deposition testimony cited by Card establishes very little about exception requests under the plan, much less that they entitle the named participant to benefits or that they are adjudicated in a unique fashion under the plan. The Court is faced with no evidence that an exception somehow overwrites a disability determination under the plan; that it should be given great or controlling weight; or that Principal is required to remind Continuum of its right to request an exception.

Quite the opposite: the sworn statement of Lisa Dickhoff, Assistant Director of Disability Claims with Principal, states that exceptions are not automatically granted, and that the exception request in this case would have been denied. (DE 71-2). The only reference in the Record provided by Card to the process by which an exception is approved simply contemplates an examiner "not[ing] something and tak[ing] it to senior staff . . . to have a

5

discussion about it." (DE 68-2 at 7). Both of these items imply that discretion was preserved on behalf of Principal, even in the case of an exception request by Card's employer. (*Compare* DE 72-1 (noting that exception requests are not automatically granted, *with* DE 68-2 at 7 (contemplating "discussion" as to whether an exception request should be granted)). Drawing the proper inferences under the summary judgment standard, given the lack of evidence regarding treatment of an exception request, and the otherwise substantial medical evidence supporting the denial as discussed below, the Court cannot find that Card was denied a full and fair review or otherwise deserves judgment based on the exception request procedure. *Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003) ("the existence of a mere scintilla of evidence" is insufficient) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).

*ii. Substantial Evidence Supports Principal's Decision*

Card next argues that Principle's denial of her claim is not supported by the evidence. (DE 68-1 at 26–35). Plaintiff Card argues that her fatigue is directly linked to her Chronic Lymphocytic Leukemia ("CLL") diagnosis, and that this fatigue prevents her from being physically capable of performing any kind of work. *Id.* at 32–34. Card believes any documents in the record to the contrary are flawed and could not have been reasonably relied upon by Principle. *Id.* The burden lies on Card to prove this, and that her condition precludes gainful employment activity, entitling her to benefits. *See Nichols v. Unum Life Ins. Co. of Am.*, 192 F. App'x 498, 504 (6th Cir. 2006). Card has not met her burden, however, as there is substantial evidence in the record that supports Principle's decision. *Evans v. UnumProvident Corp.*, 484 F.3d 866, 876 (6th Cir. 2006) ("a decision will be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence").

For example, on February 6, 2013, at the request of Dr. Baum, Dr. Ryan evaluated Card finding her "[i]n general a well developed, well nourished female in no acute distress," who also suffers from no fatigue. (DE 18-14 at 01412). Later, on August 30, 2013, Dr. Baum did note that Card described herself as suffering from "dramatic fatigue," but Card declined further tests. *Id.* at 01399–01400. In February 2014, Card's blood tests came back as normal, *id.* at 01369–01370, and, by May 2014, Dr. Baum found that her conditions related to her CLL diagnosis "looked much better" than in the past, DE 18-10 at 00964–00965. In October of 2014, when asked what was plaguing Card, Dr. Baum indicated than any fatigue suffered by Card was likely due to "afunctional/mental impairment (depression)," and did not cite any condition related to CLL. (DE 18-9 at 00962). Dr. Schell determined in November of 2014 that Card's CLL is a "low volume disease" that could not be conclusively tied to fatigue. (DE 18-7 at 00747–00748; *see also id.* at 00755–00756 (same)).

While it is true that there are documents in the Record that support Card's position that she lacks work capacity, none of these documents support the conclusion that her fatigue is conclusively tied to her CLL diagnosis. (*See, e.g.*, DE 18-10 at 00965 (noting that Card may lack work capacity, but also that her last CBC exam for her CLL was much improved). The Court "must defer to an administrative appeal committee's decision if 'it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Nichols v. Unum Life Ins. Co. of Am.*, 192 F. App'x 498, 504 (6th Cir. 2006) (quoting *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir. 2000). All that is required is that the administrator's decision be "rational." *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 298 (6th Cir. 2005); *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996). Here, in light of this highly deferential standard, and the presence of substantial evidence in the record tending to support the administrator's decision, the Court must uphold the denial of Plaintiff Card's benefits.

*iii. Conflict of Interest*

Plaintiff Card argues that Principle's inherent conflict of interest makes Principle's denial of Card's claim automatically suspect. (*See, e.g.*, DE 68-1 at 23). It is true that "where 'the potential for self-interested decision-making is evident,' we will take the administrator's conflict of interest into account as a factor in determining whether the administrator's decision was arbitrary and capricious." *Nichols v. Unum Life Ins. Co. of Am.*, 192 F. App'x 498, 502 (6th Cir. 2006) (quoting *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n.4 (6th Cir. 2000)). But an "inherent conflict of interest *does not* displace the arbitrary and capricious standard of review; rather, it is a factor that we consider when determining whether the administrator's decision to deny benefits was arbitrary and capricious." *Id.* at 503. Here, aside from a blanket claim of conflict, (*See, e.g.*, DE 68-1 at 23), Card makes no specific allegation in her motion supported by particularized evidence that a conflict of interest affected Principal's decision. As such, there is an insufficient basis to find that the inherent conflict had an adverse effect on Principle's denial of Card's benefits.

## III. CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

(1) Defendant Principle's Motion for Summary Judgment, (DE 71), is **GRANTED**; and

(2) Plaintiff Card's Motion for Summary Judgment, (DE 68), is **DENIED**.

Separate judgment to issue.

Dated September 11, 2018.

*/s/ Karen K. Caldwell*
KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY