UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

SUSAN CARD *also known as* Karen Card,

    Plaintiff,

v.

PRINCIPAL LIFE INSURANCE
COMPANY,

    Defendant.

CIVIL ACTION NO. 5:15-139-KKC

<u>OPINION AND ORDER</u>

*** *** ***

This matter is before the Court on Plaintiff Susan Card's motion for attorney's fees (DE 89) and motion to reopen the case (DE 95). For the following reasons, the Court grants both motions.

## I.    Factual Background

### A.    Procedural History

The procedural history of this case is long-standing and on-going. On May 17, 2015, Plaintiff Susan Card filed her initial complaint against Defendant Principal Life Insurance Company ("Principal"), who was the underwriter, insurer, and administrator of the disability benefits provided by Card's employer. (DE 1; DE 3 ¶¶ 7-8.) Specifically, Card sought judicial review of Principal's denial of her claims for disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. (DE 3 ¶ 3.) She argued that Principal failed to administer a "full and fair review" of her claims on initial review and on appeal, and that Principal was operating under a conflict interest due to its dual roles as the evaluator and payor of her claims. (*Id.* ¶¶ 13-14.) Card's complaint also included a claim for attorney's fees. (*Id.* ¶¶ 20-21.)

1

After initial briefing, the Court granted limited discovery and determined the "arbitrary-and-capricious standard" was the proper standard of review. (DE 30 at 4-6.) Following the conclusion of discovery, parties filed cross-motion for summary judgment. (DE 68; DE 71.) This Court granted summary judgment for Principal, once again finding that the "arbitrary-and-capricious standard of review was appropriate" and concluding that Principal's denial of disability benefits was supported by "substantial evidence." (DE 81 at 4-5.)

Card appealed. (DE 83.) The Sixth Circuit affirmed this Court's standard of review analysis and applied the "arbitrary-and-capricious" standard of review. (DE 85 at 6.) However, that Court also determined that Principal's denial was arbitrary and capricious because Principal: (1) failed to apply the proper definitions of "Disability" under the plan when determining Card's eligibility for short-term and long-term disability benefits, and life coverage during disability ("LCDD") benefits; (2) failed to adequately account for Card's actual job duties as a charge nurse and a licensed practical nurse; (3) failed to consider Card's ability to perform those duties in light of her symptoms; (4) ignored Card's treating physician's recommendation that she go on disability because of her inability to work; (5) rejected the list of job-specific restrictions provided by Card's treating physician; (6) relied on the opinions of its own file reviewers over the opinions of Card's treating physicians without providing an explanation for that preference; (7) failed to evaluate Card's claims according to the proper exertion level associated with her job duties; and (8) based its denial on Card's failure to obtain regular and appropriate care from a physician but provided no evidence to show that Card failed to follow the treatment plans of her physicians or attend her appointments as directed. (*Id.* at 10-20.) Accordingly, the Sixth Circuit vacated the judgment and "remand[ed] the case to Principal Life for further proceedings." (*Id.* at 21.) The Sixth Circuit issued its mandate on December 12, 2019. (DE 88.)

2

On remand, Card filed a motion in this Court to recover attorney's fees and costs incurred in achieving the remand on appeal.  (DE 89.)  She also filed a motion to reopen her case.  (DE 95.)  The Court denied both motions, finding that it lacked jurisdiction to consider them because the Sixth Circuit remanded the matter to Principal.  (DE 103.)  Card appealed that decision.  (DE 104.)

On Card's second appeal, the Sixth Circuit vacated the Court's order, concluding that the Court had jurisdiction to consider Card's motions.  (DE 106 at 8.)  The Sixth Circuit remanded the action back to this Court to consider Card's motions for attorney's fees and to reopen.  (*Id.*)

### B.    The Instant Motions

In her first motion, Card moves to recover the attorney's fees and costs incurred in obtaining the remand of her claims to Principal.  (DE 89.)  Card seeks a total of $66,142.50 in attorney's fees,[1] broken down as follows:

- Michael Grabhorn, Attorney, 54.9 hours x $525 hourly rate = $28,822.50

- Andrew Grabhorn, Attorney, 117.7 hours x $275 hourly rate = $32,367.50

- Savannah Drake, Paralegal, 15.9 hours x $125 hourly rate = $1,987.50

- Barbara Landgrave, Paralegal, 1.6 hours x $125 hourly rate = $200.00

- Nancy Grabhorn, Paralegal, 7.5 hours x $175 hourly rate = $1,312.50

- Shelly Miller, Staff-Nurse, 8.3 hours x $175 hourly rate = $1,452.50

(*Id.* at 16.)

---

[1] In her reply in support of her motion for attorney's fees, Card requested an additional $1,810 in attorney's fees for expenses incurred in drafting that reply.  (DE 94 at 10 n.21.)  This breakdown reflects that request.

She also requests $4,761.45 in costs.  (*Id.* at 21.)  These costs include:

- $1,045.00 in court filing fees in this Court, the Sixth Circuit, and the District of Massachusetts

- $81.30 in postage costs, consisting of costs associated with service of process, efforts to obtain documents, and letters to Card and Principal

- $55.20 in mileage for travel "related to this case"

- $3,290.35 in deposition costs for conducting the Fed. R. Civ. P. 30(b)(6) deposition of Principal, including transcript fees, video fees, and court reporter fees

- $98.00 in costs for copying filings

- $111.65 in outsourced printing costs for printing the administrative record

- $79.95 in scanning costs to prepare filings for e-filing and electronic use

(*Id.* at 21; DE 89-2 at 8-10.)

In her other motion, Card seeks to her reopen her case and obtain judicial review of her claims. (DE 95.)  Following the remand from the Sixth Circuit, Principal approved Card's claim for short-term disability benefits.  (*Id.* at 2; DE 95-1 at 1.)  In the approval letter dated December 18, 2019, Principal also requested various medical information from Card's counsel so that it could review her remaining claims for long-term disability and LCDD benefits.  (DE 95-1 at 1.)  The requested information included a copy of Card's Social Security claim file and updated pharmacy and medical records.  (*Id.*)  Principal asked counsel to provide the information within 60 days, and once received, Principal would "require an additional 60 days for review."  (*Id.*)

Card's counsel responded to the letter on December 27, 2019, disagreeing with the deadlines that Principal set forth in its approval letter because they allegedly violated

ERISA. (DE 99-2 at 1.) Her counsel also stated that they would respond to Principal's requests for information. (*Id.* at 2.) Principal replied on January 8, 2020, informing Card's counsel that the requested information was necessary for evaluation of Card's long-term disability claim. (DE 99-3 at 1-2.) Principal followed up regarding the requested information on January 17, 2020, and asked for a list of providers so that Principal could request the medical records directly. (DE 99-4 at 1.) After the expiration of the first 60-day period, Principal's counsel followed up again regarding the requests for information. (DE 95-2 at 1.) As of February 26, 2020—the date Card filed her motion to reopen—Card had not provided the requested information or the contact information for her providers. (*See* DE 95.) At that time, Principal had not yet issued any decision on her claims for long-term disability or LCDD benefits. (*Id.*)

On May 7, 2020, Principal denied Card's claims for long-term disability and LCDD benefits based, in part, on Card's failure to provide the requested information. (DE 101-1 at 6.) Principal later filed the denial letter in the court record. (*Id.*) Card objected to the filing, arguing that the Court may not consider the denial because the administrative record closed when Principal's deadline to issue a determination expired. (DE 102 at 1-2.)

## II.   Motion for Attorney's Fees

To recover for attorney's fees under ERISA, the claimant must first establish eligibility to receive attorney's fees and costs. *See* 29 U.S.C. § 1132(g)(1); *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010). Once a claimant has established its *eligibility* to receive attorney's fees, a court must determine whether the claimant is *entitled* to a fee award. *Geiger v. Pfizer, Inc.*, 549 F. App'x 335, 338.

### A.   Plaintiff achieved "some degree of success on the merits" when the Sixth Circuit remanded her case.

In an ERISA action, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." § 1132(g)(1).   In *Hardt v. Reliance Standard Life Insurance Co.*, 560 U.S. 242 (2010), the Supreme Court clarified that a claimant does not need to attain "prevailing party" status to recover attorney's fees and costs under 29 U.S.C. § 1132(g)(1).   *Id.* at 252.   Instead, the claimant must only show "some degree of success on the merits" for eligibility to receive a fee award.   *Id.* at 255 (quotation marks omitted).   A claimant will not fulfill this requirement upon only a "trivial success on the merits" or a "purely procedural victory." *Id.* (quotation marks omitted).

In *Hardt*, the plaintiff sought relief under ERISA, requesting judicial review of the plan administrator's denial of her claim for long-term disability benefits.   *Id.* at 247.   The trial court denied both parties' motions for summary judgment, although it found "compelling evidence that [the plaintiff was] totally disabled" and was "inclined to rule in her favor." *Id.* at 248 (quotation marks omitted).   The trial court nevertheless remanded the claim back to the plan administrator for proper review consistent with ERISA requirements.   *Id.* at 248. On remand, the plan administrator granted disability benefits to the plaintiff.   *Id.* at 249. The plaintiff subsequently moved for attorney's fees and costs under § 1132(g)(1) to recover for expenses incurred in achieving the court-ordered remand.   *Id.*   The Supreme Court concluded that although the plaintiff was not technically a "prevailing party," the remand she achieved, against the factual backdrop of the case, constituted some "success on the merits." *Id.* at 256.   However, the Supreme Court declined to "decide . . . whether a remand order, *without more*, constitutes 'some success on the merits' sufficient to make a party eligible for attorney's fees under § 1132(g)(1)."   *Id.* at 256 (emphasis added).

6

The Sixth Circuit later resolved this open question in *McKay v. Reliance Standard Life Insurance Co.*, 428 F. App'x 537 (6th Cir. 2011), finding that, regardless of the claimant's ultimate eligibility for benefits, a claimant could show "some degree of success on the merits" by solely achieving a remand. *Id.* at 546-47. There, although the Sixth Circuit affirmed the plan administrator's denial of benefits, it also upheld the claimant's fee award based on the initial remand. *Id.*

Likewise, Card is eligible to receive a fee award because she achieved some degree of success on the merits when the Sixth Circuit remanded her claims back to Principal. The ultimate success of her claims is not relevant to the eligibility determination. The remand alone is enough to establish eligibility.

In disputing Card's eligibility to receive a fee award, Principal focuses on the language in *Hardt* that questions if a remand "without more" is enough to warrant attorney's fees. (DE 93 at 5.) Principal, however, does not address *McKay*, which answered this question—in the Sixth Circuit, a remand is adequate. Instead, Principal cites to a litany of cases holding that a remand by itself is insufficient. (DE 93 at 7-8.) These cases are inapposite. *Christoff v. Ohio Northern University Employee Benefit Plan*, No. 3:09CV540, 2010 WL 3958735 (N.D. Ohio Oct. 8, 2010) and *Yates v. Bechtel Jacobs Co.,* No. 3:09-CV-51, 2011 WL 2462811 (E.D. Tenn. June 20, 2011) pre-date *McKay*. *McCollum v. Life Insurance Co. of North America.*, No. 10-11471, 2013 WL 308978, at *1 (E.D. Mich. Jan. 25, 2013) is an outlier case that fails to discuss *McKay* altogether. The remainder of the cases are from district courts found in other circuits. In light of binding Sixth Circuit precedent, Card is eligible to receive attorney's fees and costs incurred in achieving the initial remand of her claims.

**B.      As a whole, the five *King* factors weigh in Plaintiff's favor.**

In determining whether a claimant is entitled to a fee award, the court considers the following five factors, known as the "*King* factors:"

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Sec'y of Dep't of Lab. v. King,* 775 F.2d 666, 669 (6th Cir. 1985).  No one factor is dispositive.  *Geiger*, 549 F. App'x at 338.

On balance, these factors weigh in Card's favor.  Therefore, she is entitled to receive attorney's fees and costs.

**1.      Culpability**

The first factor emphasizes the "degree" of culpability or bad faith, "not merely whether the opposing party is culpable in any sense of the word." *Geiger*, 49 F. App'x at 338.  A plan administrator acts with the requisite culpability where it "engages in an inadequate review of the beneficiary's claim;" selectively reviews the medical records; "relie[s] solely on the opinion of its [own] in-house physician who never examined the claimant;" or "otherwise acts improperly in denying benefits." *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 377 (6th Cir. 2009); *see also Moon v. Unum Provident Corp.*, 461 F.3d 639, 644 (6th Cir. 2006).  However, courts have denied fee awards where the plan administrator simply "misread[]" the relevant policy, *Shelby Cnty. Health Care Corp.*, 581 F.3d at 377, or "did not adequately justify its decision in the record," *Bustetter v. Standard Ins. Co.*, CIVIL ACTION NO. 18-1-DLB-EBA, 2019 WL 4645568, at *8 (E.D. Ky. Sept. 24, 2019).

Principal maintains that its denial of Card's claims resulted from a mere misinterpretation of policy—namely, that Principal erroneously construed the policy as

requiring Card to show her inability to perform her *occupation* as it is performed in the national economy rather than her inability to perform her individual *job duties*. (DE 93 at 9-10.) Principal also claims, without further explanation, that it "simply did not adequately justify its decision in the record." (*Id.* at 10.)

While the Sixth Circuit deemed Principal's denial as arbitrary and capricious based in part on Principal's failure to apply the proper definitions of "Disability" under the policy, that was not the sole reason for the remand. The Sixth Circuit also found that Principal's review of Card's claims was inadequate for the following reasons: (1) Principal failed to account for Card's actual job duties, the exertional level required by those job duties, and her ability to perform the job duties in light of her symptoms; (2) Principal concluded that Card failed to obtain regular and appropriate care from a physician with no evidence to support that conclusion; (3) Principal selectively reviewed Card's medical records by ignoring the recommendations and restrictions of her treating physician; and (4) without justification, Principal relied on the opinions of its own in-house physicians who merely reviewed her file. (DE 83 at 10-20.) Principal's actions were in line with those that courts have previously found to necessitate a fee award. *See Shelby Cnty. Health Care Corp.*, 581 F.3d at 377; *Moon*, 461 F.3d at 644. The record is devoid of any indication that Principal denied Card's claims in bad faith, but, as a whole, Principal still acted with the requisite culpability to warrant attorney's fees.

Thus, this factor weighs in favoring of awarding Card fees and costs.

### 2. Ability to Satisfy Award

The parties do not dispute that Principal is able to satisfy a fee award. (DE 89 at 10; DE 93 at 11.) Therefore, this factor weighs in Card's favor.

### 3.   Deterrent Effect

A fee award is more likely to have a deterrent effect on other plan administrators when the underlying facts are widely applicable such that "the principles articulated by the court [in remanding the case] are the type all plan administrators should follow." *Bio-Medical Applications of Ky., Inc. v. Coal Exclusive Co.*, Civil No. 08-80-ART, 2011 WL 3568249, at *5 (E.D. Ky. Aug. 15, 2011). In making this determination, courts consider the factors that made the plan administrator's determination arbitrary and capricious. *See Moon*, 461 F.3d at 645; *Thies v. Life Ins. Co. of N. Am.*, 839 F. Supp. 2d 886, 892 (W.D. Ky. 2012).

A fee award here is likely to have a deterrent effect on other plan administrators since the Sixth Circuit remanded the action in accordance with principles widely applicable to other plan administrators. In finding that Principal's determination was arbitrary and capricious, the Sixth Circuit focused on these findings: (1) Principal failed to properly apply the definitions found in its policy; (2) it failed to consider Card's actual job duties and the impact of her physical limitations on her ability to perform those duties; (3) it ignored the recommendations and findings from Card's treating physicians; (4) it relied solely on the opinions of its own physicians over Card's treating physicians without any explanation; and (5) it otherwise failed to provide sufficient explanations for many of its conclusions. (DE 83 at 10-20.) Similarly, if the Court awards attorney's fees to Card, that will likely deter other plan administrators from likewise carelessly applying their policies, ignoring a claimant's job duties in evaluating claims, ignoring the impact of a claimant's physical limitations, disregarding the opinions of a claimant's treating physician, and otherwise failing to establish evidentiary support for their determinations. In short, the facts here "are not so unique that they fail to serve any deterrence value to other insurance companies under similar circumstances." *Moon*, 461 F.3d at 645; *see also Hayden v. Martin Marietta Materials,*

*Inc.*, Civil Action No. 5:11-CV-00116, 2012 WL 5362871, at *5 (W.D. Ky. Oct. 31, 2012) ("The Court finds that an imposition of attorneys' fees and costs will serve to deter other plan administrators from committing missteps similar to those that rendered Defendant's determination arbitrary and capricious in regard to Plaintiff's mental-health claim.").

Because a fee award is likely to have a deterrent effect on other plan administrators, this factor also weighs in Card's favor.

### 4.    Conferral of a Common Benefit or Resolution of Significant Legal Questions

Card has provided no evidence to show that she pursued this lawsuit to confer a common benefit on others or resolve a significant legal question. "Where a claimant seeks benefits only for himself, we generally have found the common-benefit factor to weigh against an attorney-fee award." *Shelby Cnty. Health Care Corp.*, 581 F.3d at 378. Indeed, Card has not identified any other individual (other than herself) who her lawsuit may benefit. *Thies*, 839 F. Supp. 2d at 893 ("In the present case, the Plaintiffs have not identified any individuals or plan beneficiaries that are in similar positions, nor is there any evidence that the Plaintiffs sought to confer a common benefit on others."). As it stands, this a run-of-the mill ERISA dispute regarding one specific plaintiff's eligibility for benefits. Accordingly, this factor weighs in Principal's favor and against a fee award.

### 5.    Relative Merits

The "relative merits" factor is "intertwined with the first factor of culpability or bad faith." *Dublin Eye Assocs., P.C. v. Mass. Mut. Life Ins. Co.*, No. 5:11-CV-128-KSF, 2014 WL 1217664, at *7 (E.D. Ky. Mar. 24, 2014). In an ERISA case, the claimant's case has merit when the claimant "overcome[es] the deferential arbitrary and capricious standard of review." *Bio-Medical*, 2011 WL 3568249, at *6.

Since the Court finds that Principal acted with the requisite culpability, it similarly finds that Card's case has merit. Moreover, Card also demonstrated the merits of her claim by virtue of overcoming the arbitrary and capricious standard on appeal. The Court acknowledges that it initially determined that Principal's determination was based on substantial evidence. It also recognizes that the Sixth Circuit did not ultimately determine Card's eligibility for benefits and that one Circuit Judge on the panel dissented. However, the majority still found that Principal's determination was arbitrary and capricious. Given the majority's conclusion and Principal's culpability in issuing such a determination, the Court cannot find that Principal's position has more merit than Card's. This factor weighs in Card's favor.

Four of the five *King* factors weigh in favor of granting a fee award to Card. On balance, these factors demonstrate that Card is entitled to the attorney's fees and costs incurred in achieving a remand. Using the discretion afforded to it under ERISA, the Court accordingly grants Card's motion for attorney's fees and costs.

Next, the Court must find the amount of attorney's fees and costs that Card may recover.

**C.    The Court will award $47,635.00 in attorney's fees and $857.92 in costs to Card.**

**1.    Fees**

To determine a reasonable attorney's fee, a court uses the "lodestar" approach, which multiplies "number of hours reasonably expended on the case" by a "reasonable hourly rate." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000).

**a.    Hourly Rate**

Principal only disputes the hourly rate of Michael Grabhorn. Because it does not challenge the hourly rates of the other legal staff, the Court accepts the proffered hourly rates

12

and will calculate fees for those individuals based on those rates.[2]  Therefore, Mr. Grabhorn's hourly rate is the only rate subject to the Court's analysis.

Courts determine the "reasonable hourly rate" based on the "prevailing market rate in the relevant community." *Adcock-Ladd*, 227 F.3d at 350.  The relevant community is "the legal community within that court's territorial jurisdiction." *Id.*  Accordingly, the "prevailing market rate" is the "rate which lawyers of comparable skill and experience can reasonably expect to [earn] within" that community.  *Adcock-Ladd*, 227 F.3d at 350.

Since this action is pending in the Eastern District of Kentucky, the reasonable hourly rate for Mr. Grabhorn is based on the prevailing market rate in Eastern Kentucky. Therefore, in making this determination, the Court will consider the rate that other ERISA lawyers of similar skill and experience as Mr. Grabhorn can expect to earn in Eastern Kentucky.

Card contends that Mr. Grabhorn's current rate[3] of $525/hour is a reasonable hourly rate (DE 89 at 17), while Principal maintains that $375/hour is a more appropriate rate for Mr. Grabhorn (DE 93 at 16).  To support her position, Card submits the declaration of Philip Fairbanks.  (*See* DE 89-3 at 1-2.)  Mr. Fairbanks is a partner at a law firm in Lexington, Kentucky.  (DE 89-3 at 1 ¶ 2.)  He litigates ERISA-related claims and is familiar with the community of plaintiffs' lawyers who also litigate ERISA claims in Eastern Kentucky.  (*Id.* ¶¶ 4-6.)  Based on his familiarity with the rates charged for similar work performed in Eastern Kentucky and his assessment of Mr. Grabhorn's qualifications, Mr. Fairbanks states that a rate of $525/hour is a reasonable hourly rate for attorneys with similar skills and

---

[2] These rates are $275/hour for Andrew Grabhorn, $125/hour for Savannah Drake, $125/hour for Barbara Landgrave, $175/hour for Nancy Grabhorn, and $175/hour for Shelly Miller.  (DE 89 at 16.)

[3] Mr. Grabhorn's "current rate" was his hourly rate in January 2020, when this motion was filed.  (DE 89.)

experience practicing in Eastern Kentucky.  (*Id.* ¶ 10.)  Principal does not submit any evidence to dispute that $525/hour is the prevailing market rate for attorneys performing similar work in Eastern Kentucky, the only relevant community for purposes of establishing this rate.  Absent this evidence, the Court accepts $525/hour as a reasonable hourly rate for Mr. Grabhorn.  *Thies*, 839 F. Supp. 2d at 895 (relying on the claimant's asserted "prevailing market rate" where the opposing party failed to produce any evidence to the contrary).

Principal argues that the Court should not rely on Mr. Grabhorn's current hourly rate but rather his hourly rate for the years 2015 through 2017, the time period in which he performed the relevant work.  (DE 93 at 15-16.)  However, a court has the "discretion to choose either current or historical rates so long as it explains how the decision comports with the ultimate goals of awarding reasonable fees."  *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 617 (6th Cir. 2007).  Considering that this action has been pending in front of this Court for over seven years and that this instant motion has been pending for two years, reliance on the current hourly rate is appropriate to compensate for the delay in payment of attorney's fees and costs.  *See Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005) (upholding fee award where lodestar calculation relied on current rates because "the litigation had been ongoing for nearly six years"); *Bank One, N.A. v. Echo Acceptance Corp.*, 595 F. Supp. 2d 798, 801 (S.D. Ohio 2009) (finding the use of current rates "reasonable" to compensate for "a delay in payment"); *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 684 F. Supp. 953, 958 (N.D. Ohio 1988) (using current rate for the lodestar calculation because it "takes into account the effect of inflation, foregone interest and delay in payment"); *cf. Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556 (2010) ("Compensation for this delay is generally made 'either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.'") (quoting *Missouri v. Jenkins*, 491 U.S. 274, 282 (1989)); *Jenkins*, 491 U.S.

14

at 283-84 ("Clearly, compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings.").

The Court will use an hourly rate of $525/hour to calculate the fees incurred for work performed by Mr. Grabhorn.

### b.   Hours Expended

To establish the number of hours expended, the claimant must provide "a particularized billing record" to the court. *Loan v. Prudential Ins. Co. of Am.*, 788 F. Supp. 2d 558, 565 (E.D. Ky. 2011) (citation and quotation marks omitted). The billing record must include "sufficient detail . . . to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation."[4] *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) (citation and quotation marks omitted). The record is insufficient if the court cannot discern the amount of time spent on each task. *Id.* The claimant also cannot recover fees for hours that are "excessive, redundant and unnecessary." *Loan*, 788 F. Supp. 2d at 565 (citation and quotation marks omitted).

Principal disputes the hours Card's attorneys spent briefing the unsuccessful standard of review argument and pursuing "aggressive[]" discovery. (DE 93 at 17.) As it relates to discovery, Principal challenges the hours counsel spent preparing and conducting Principal's 30(b)(6) deposition, and filing its motion to compel a third-party subpoena. (*Id.* at 17-18.) Principal asks the Court to reduce the hours Card's counsel expended or offset the lodestar amount by the costs Principal incurred. (*Id.* at 17.)

---

[4] Card requested an additional $1,810 in attorney's fees for expenses incurred in drafting the reply to her motion for attorney's fees. (DE 94 at 10 n.21.) However, she provided <u>no</u> billing records to support this request. Therefore, the fee award will not include these fees.

### 1.    Standard of Review Argument

"Fees are rarely split because work was on unrelated successful and unsuccessful claims." *Am. Canoe Ass'n, Inc. v. City of Louisa*, 683 F. Supp. 2d 480, 489 (E.D. Ky. 2010). A claimant can recover for both successful and unsuccessful claims when the claims involve "common facts," present "related legal theories," or consist of time "devoted generally to the litigation as a whole." *Imwalle*, 515 F.3d at 552. A court will only reduce the fee award when "the plaintiff has presented distinctly different claims for relief based on different facts and legal theories." *Id.*

Card's standard of review argument proved unsuccessful at every stage of litigation. However, the Court will not exclude the hours counsel spent litigating this argument because it presented legal theories related to Card's successful argument that Principal's denial of her claims was arbitrary and capricious. The standard of review determined the lens through which the Sixth Circuit examined Principal's determination. Based on that standard, that Court found that the determination was arbitrary and capricious, requiring remand. Therefore, the standard of review argument was not distinctly different than Card's successful argument that Principal's denial of her benefits was improper. The Court will not reduce the fee award "simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

Accordingly, the fee award will include fees for hours spent litigating the standard of review argument.

### 2.    Discovery

Principal challenges the hours Card's counsel expended in conducting the 30(b)(6) deposition of Principal, specifically pointing to the hours Michael Grabhorn and Andrew Grabhorn both spent on conducting that deposition. (DE 93 at 18.) "Multiple-lawyer litigation is common and not inherently unreasonable." *The Ne. Ohio Coal. for the Homeless*

*v. Husted*, 831 F.3d 686, 704 (6th Cir. 2016). Indeed, "[a]n award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." *Auto. Support Grp., LLC v. Hightower*, No. 11-11169, 2012 WL 32733, at *6 (E.D. Mich. Jan. 6, 2012) (citation and quotation marks omitted). Here, the billing records indicate that each attorney largely provided his own district contribution to the deposition: Michael Grabhorn drafted the topics, reviewed objections, deposed the witness, and corresponded with opposing counsel regarding confidential designations and document productions. (DE 89-2 at 11-13.) Andrew Grabhorn drafted and filed the 30(b)(6) notices, and corresponded with the court reporter regarding transcripts. (*Id.* at 14-15.) While both attorneys prepared for and attended the deposition, the Court does not find that this is so outside the realm of the customary practice for multi-lawyer litigation as to foreclose the recovery of fees incurred. (DE 89-2 at 11-15.)The fee award will therefore reflect hours expended in conducting the 30(b)(6) deposition.

However, the Court will omit any hours Card's legal team spent litigating the motion to compel a third-party to comply with a subpoena. Federal Rule of Civil Procedure 45 governs the procedures for subpoenas in federal court. *See* Fed. R. Civ. P. 45. "Rule 45 does not provide for an award of attorneys' fees and expenses for bringing a motion to compel a production of documents under subpoenas." *Berkley Ins. Co. v. Suffolk Constr. Co.*, Case No. 19-23059-Civ-WILLIAMS/TORRES, 2020 WL 10057924, at *2 (S.D. Fla. Oct. 30, 2020) (M.J. Torres); *see also Patel v. Bhakta*, CIVIL ACTION NO. 1:15-CV-562-MHC-ECS, 2015 WL 12159208, at *4 (N.D. Ga. Apr. 29, 2015) (same). Because Rule 45 does not allow for such recovery, Card cannot recover for the hours that her counsel spent litigating the motion to compel a third party's compliance with a subpoena. Recovery of attorney's fees would prove especially problematic here, where the award would unfairly impute fees on Principal for a dispute in which it was never even involved. The Court will therefore reduce Michael

Grabhorn's total hours by 26.6 hours, Andrew Grabhorn's total hours by 9.8 hours, and Ms. Drake's total hours by 0.3 hours.

Aside from these two specific objections, Principal also argues that the Court should not award fees that Card's counsel incurred in generally pursuing discovery.  Principal does not cite any caselaw to support its argument or point to any particular entries that the Court should disregard.  The fee award will reflect all other hours that counsel spent on discovery-related matters.

### c.   Total Fee Award

The Court will thus award Card attorney's fees based on the following lodestar calculations for a total fee award of $47,635.00:

- Michael Grabhorn, Attorney, 28.3 hours x $525 hourly rate = $14,857.50

- Andrew Grabhorn, Attorney, 101.7 hours x $275 hourly rate = 27,967.50

- Savannah Drake, Paralegal, 15.6 hours x $125 hourly rate = $1,950.00

- Barbara Landgrave, Paralegal, 1.6 hours x $125 hourly rate = $200.00

- Nancy Grabhorn, Paralegal, 6.9 hours x $175 hourly rate = $1,207.50

- Shelly Miller, Staff-Nurse, 8.3 hours x $175 hourly rate = $1,452.50

### 2.   Costs

As it relates to costs, 29 U.S.C. § 1132(g)(1) provides "the court in *its discretion may allow . . .* costs of action to either party." § 1132(g)(1) (emphasis added).  However, the statute does not specify which costs are recoverable.  *See id.*; *Johnson v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 527 (8th Cir. 2020).

While the Sixth Circuit has yet to decide the issue, some federal appellate courts have interpreted § 1132(g)(1) consistently with 28 U.S.C. § 1920, the statute defining the costs that a prevailing party may generally recover in a civil lawsuit.  *Johnson*, 950 F.3d at 527 ("The

district court abused its discretion by awarding costs that were not taxable under 28 U.S.C. § 1920."); *Agredano v. Mut. of Omaha Cos.*, 75 F.3d 541, 544 (9th Cir. 1996) ("We therefore hold that section 502(g)(1)'s allowance for 'costs of action' empowers courts to award only the types of 'costs' allowed by 28 U.S.C. § 1920, and only in the amounts allowed by section 1920 itself, by 28 U.S.C. § 1821 or by similar such provisions."); *Holland v. Valhi Inc.*, 22 F.3d 968, 979 (10th Cir. 1994) ("But absent a specific statutory provision, an award of expert fees [in an ERISA case] must be based on 28 U.S.C. §§ 1821 and 1920.")  Others have found that § 1920 is not binding.  *See Evans v. Books-A-Million*, 762 F.3d 1288, 1299 (11th Cir. 2014) ("Based upon these precedents, it would appear that the definition of costs under § 1920 is not controlling.")  District courts within the Sixth Circuit are similarly split.  *Elec. Energy, Inc. v. Lambert*, No. 10-2629-STA, 2011 WL 1883986, at *6 (W.D. Tenn. May 17, 2011) ("However, 28 U.S.C. § 1920 generally governs awards of costs under federal law, including ERISA actions, and provides for only specific kinds of costs."); *Nw. Ohio Plumbers & Pipefitters Loc. 50 Emp. Benefit v. Helm & Assocs., Inc.*, No. 3:06 CV1395, 2008 WL 11518443, at *5 (N.D. Ohio Sept. 12, 2008) (applying 28 U.S.C. § 1920 to 29 U.S.C. § 1132(g)(1)); *Hall v. Ohio Educ. Ass'n*, 984 F. Supp. 1144, 1145 (S.D. Ohio 1997) ("Thus, the Court will examine section 1920 to determine what costs Defendants may recover.").  *But see Thies*, 839 F. Supp. 2d at 896 ("The [Defendant] has not pointed to any authority that would lead the Court to find that the express language of 29 U.S.C. § 1132(g)(1), which allows the recovery of costs in the Court's discretion, is limited by 28 U.S.C. § 1920.")

Parties apparently agree that § 1920 governs the recovery of costs under § 1132(g)(1). (DE 93 at 19; DE 94 at 17.)  In its discretion, the Court will use § 1920 as a reference point

for determining the costs awarded to Card.[5]

Parties do not dispute the costs for scanning ($79.95) or postage ($81.30), so the Court will account for these costs in the total cost award. While Principal does not explicitly address the request for filing fees, the Court will, in its discretion, reduce those fees by one-third. Those fees include fees to file the motion to compel compliance with the third-party subpoena in the District of Massachusetts. For the reasons given above, Card cannot recover for fees or costs incurred in filing that motion.

Principal challenges the remainder of the costs requested: printing costs ($111.65), copying costs ($98.00), mileage ($55.20), and deposition costs ($3,290.35). As with attorney's fees, "[t]he party seeking costs must not only show that the costs claimed are recoverable, but must also provide sufficient detail and sufficient documentation regarding those costs in order to permit challenges by opposing counsel and meaningful review by the Court." *Vistein v. Am. Registry of Radiologic Technologists*, No. 1:05CV2441, 2010 WL 918081, at *4 (N.D. Ohio Mar. 10, 2010). Most of Card's remaining requests lack the detail necessary to award costs under this standard. Card cannot recover for any of the remaining costs.

### a.    Printing Costs

First, Card requests $111.65 in printing costs for the printing of the administrative record by an outside vendor. (DE 94 at 16-17.) The administrative record was available online in the Court's electronic docketing system. (*See* DE 18.) "Copy costs for the convenience of counsel are generally not recoverable [under § 1920]." *Szeinbach v. Ohio State*

---

[5] This is in line with how the Supreme Court has interpreted "costs" in the context of other fee-shifting statues. *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 87 n.3 (1991) (stating that "costs" in 42 U.S.C. § 1988 should be "read in harmony with the word 'costs' in 28 U.S.C. § 1920"), *superseded by statute on other grounds*; *see also Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) ("We hold that absent explicit statutory or contractual authorization for the taxation of [certain expenses] as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920.").

*Univ.*, Case No. 2:08-cv-822, 2017 WL 2821706, at *16 (S.D. Ohio June 30, 2017); *see also Beck v. Buckeye Pipe Line Servs. Co.*, No. 3:10 CV 319, 2011 WL 3040910, at *2 (N.D. Ohio July 25, 2011) ("Generally, courts do not award the prevailing party costs of printing their own materials, especially when the court employs an electronic docketing system specifically to avoid such costs."). Given that the administrative record was otherwise accessible to Card, the Court will deny her request for printing costs.

### b.    Copying Costs

Next, Card asks for $98.00 in copying costs. A prevailing party may recover for "the costs of making copies of any materials where the copies are necessarily obtained for use in the case." However, Card never specified which documents she copied, much less why the copies were "necessarily obtained" for use in prosecuting her case. Courts may not "rubber stamp" a request for photocopying costs but instead, "should cast a strict eye toward counsel's expense submissions." *Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1152-53 (6th Cir. 1998); *Harris v. Goins*, Civil Action No. 6:15-151-DCR, 2018 WL 1972702, at *1 (E.D. Ky. Apr. 26, 2018) (rejecting recovery of costs for photocopies where claimant provided "no detail as to why the photocopies making up that total were necessarily obtained for use in the case"); *Smith v. Joy Techs., Inc.*, Civil No. 11-270-ART, 2015 WL 428115, at *6 (E.D. Ky. Feb. 2, 2015) (same). Card does not submit any other documentation to support her request. Without these details, the Court cannot grant Card's request for copying costs.

### c.    Mileage

Card also seeks to recover $55.20 in mileage "related to this case." (DE 89-2 at 8-9 ¶ 25.) Absent from this request is any detail or documentation as to who incurred the mileage, where that individual was traveling, or why the travel was necessary. Since Card's request lacks sufficient detail and documentation, she cannot recover mileage expenses. Even if Card provided adequate proof of the purported mileage, travel expenses incurred by parties are

not recoverable under § 1920.  *Sales v. Marshall*, 873 F.2d 115, 122 (6th Cir. 1989).  Because recovery is not permitted by § 1920, Card's request also fails on this ground.

### d.     Deposition Costs

Finally, Card requests $3,290.35 in deposition costs.  "Deposition expenses are generally taxed as costs under § 1920," pursuant to subsections (2)[6] and (4)[7].  *King v. Gowdy*, 268 F. App'x 389, 391 (6th Cir. 2008).  To recover for deposition costs under these subsections, the party must show that the deposition and any related transcripts were "necessarily obtained for use in the case."  §§ 1920(2), (4); *Siemens Energy, Inc. v. CSX Transportation, Inc.*, Civil No. 3:15-cv-00018-GFVT, 2021 WL 1032298, at *3 (E.D. Ky. Mar. 17, 2021).  Card's motion states that the deposition costs "include[] video conference and transcript fees."  (DE 89-2 at 9.)  Elsewhere, billing records label the costs as "[c]ourt reporter fees."  (DE 89-2 at 10.)  Card provides no other details regarding these costs or any other backup documentation demonstrating that she incurred those costs.  Card does not attempt to demonstrate the necessity of the deposition and its transcripts to her case.  The Court cannot meaningfully review Card's request without further detail about these costs, the necessity of those materials to her case, or supporting documentation to verify that these costs were actually incurred.  Therefore, Card's request for deposition costs is denied.

### e.     Total Cost Award

Accordingly, the Court will award a total of $857.92 in costs to include the following:

- Scanning costs: $79.95

- Postage: $81.30

---

[6] A prevailing party may recover for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case."  § 1920(2).

[7] A prevailing party may recover for "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case."  § 1920(4).

- Court filing fees: $696.67

## III.   Motion to Reopen Case

"[A] motion to reopen a case permits judicial review following an administrative decision following remand." *Bustetter v. Standard Ins. Co.*, CIVIL ACTION NO. 18-1-DLB-EBA, 2020 WL 2198972, at *2 (E.D. Ky. May 6, 2020). Accordingly, a motion to reopen is the mechanism through which Card may pursue judicial relief after she has exhausted her administrative remedies on remand.

### A.   Card's claims are deemed exhausted because Principal failed to issue a determination by the requisite deadline.

Pursuant to the Department of Labor's deadlines for ERISA claims, a plan administrator must process a claimant's administrative appeal of a disability benefits determination within 45 days. *See* 29 CFR §§ 2560.503-1(i)(1)(i), (i)(3)(i). "If the plan administrator determines that an extension of time for processing is required," then the administrator must provide written notice of the extension before the end of the 45-day period. §§ 2560.503-1(i)(1)(i), (i)(3)(i). The notice must detail the "special circumstances" warranting an extension and the date on which the plan administrator expects to issue its determination. *Id.* Such an extension must not exceed a period of 45 days beyond the end of the initial deadline. *Id.* However, if the extension is due to the "claimant's failure to submit information necessary to decide a claim," the deadline "[is] tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information." *Id.* § (i)(4). If the plan administrator fails to issue the determination by the deadline, "a claimant shall be deemed to have exhausted the administrative remedies available under the plan" and may pursue judicial relief. *See id.* § (l)(1).

As an initial matter, Principal disagrees that the Department of Labor's deadlines for ERISA claims, as found in 29 CFR § 2560.503-1, governed its determination following the Sixth Circuit's remand.  (DE 99 at 2-6.)  Principal submits no case law to support its position.  However, one court in the Eastern District of Kentucky has held that these deadlines apply to determinations made after a court-ordered remand.  *Bustetter v. Standard Ins. Co.*, 529 F. Supp. 3d 693, 700-01 (E.D. Ky. 2021).  Other federal courts have consistently arrived at the same conclusion.  *See Krysztofiak v. Bos. Mut. Life Ins. Co.*, Civil Action No. DKC 19-0879, 2021 WL 5304011, at *2-*3 (D. Md. Nov. 15, 2021); *Spears v. Liberty Life Assurance Co. of Bos.*, CIVIL ACTION NO.: 3:11-cv-1807 (VLB), 2019 WL 4766253, at *29 (D. Conn. Sept. 30, 2019); *Robertson v. Standard Ins. Co.*, 218 F. Supp. 3d 1165, 1169 (D. Or. 2016); *Solnin v. Sun Life & Health Ins. Co.*, 766 F. Supp. 2d 380, 394 (E.D.N.Y. 2011).

The Court sees no reason to stray from this authority.  Such a rule best comports with ERISA's purpose to "resolve disputes over benefits inexpensively and expeditiously."  *Perry v. Simplicity Eng'g,* 900 F.2d 963, 967 (6th Cir. 1990).  Without a deadline for determining disability claims on court-ordered remand, the claims could be pending in perpetuity, leaving claimants without recourse and foreclosing their avenue to judicial relief.  This cannot be what the Department of Labor envisioned in promulgating these ERISA regulations.  Therefore, the Court finds that the Department of Labor's ERSIA deadlines applied to Principal's determination of Card's claims on remand.

Principal maintains that regardless of whether the ERISA deadlines applied, it "substantially complied" with the deadlines, and therefore, the Court should deny Card's motion.  (DE 99 at 7.)  Card responds that "substantial compliance" is inapplicable here, presumably arguing that Principal must instead *strictly* comply with the deadline.  (DE 100 at 7-8.)

Without deciding the proper standard for evaluating a plan administrator's failure to meet an ERISA deadline, Principal cannot meet either the strict compliance or substantial compliance standard. To determine whether a plan administrator substantially complied with an ERISA regulation, the Court "considers all communications between an administrator and [the claimant] to determine whether the information provided was sufficient under the circumstances." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 436 (6th Cir. 2006). Principal failed to substantially comply with the deadline; throughout its communications with Card's counsel, Principal provided insufficient information regarding an extension of the deadline and the reasons for that extension. If Principal did not substantially comply with the ERISA deadline, it certainly did not strictly comply with that regulation.

At the outset, Principal did not show any intention to comply with the ERISA deadline or the requirements for extending that deadline. In its initial letter to Card following the Sixth Circuit's remand, Principal asked Card to provide updated medical information within 60 days, which is already beyond the 45 days Principal had to issue its determination on her remaining disability claims. (DE 95-1 at 1.) Principal did not label this deadline as an extension, did not detail any special circumstances warranting a 15-day extension, or state when it expected to ultimately issue its determination. (*Id.*) In the same letter, Principal stated that upon receipt of the updated medical information, it would require an additional 60 days to review Card's claims and make its determination. (*Id.*) Again, Principal did not designate the additional 60 days as an extension, did not articulate any special circumstances compelling that extension, or identify the date on which it expected to issue its decision. (*Id.*) Overall, Principal did not take the necessary steps to provide proper written notice of an extension.

Even if Principal provided adequate written notice of an extension, Principal had, at most, 90 days to issue a decision, unless the tolling provision applied. Therefore, a 120-day extension was outside of the bounds allowed by ERISA. While Principal contends that the deadline for its determination was tolled because Card did not provide the information necessary to make its determination, Principal did not comply with the procedures required to invoke tolling. Under the tolling provision, the plan administrator initiates tolling "the date on which the notification of the extension is sent to the claimant" in accordance with §§ 2560.503 (i)(1) and (i)(3), the subsections setting forth the notification requirements. § 2560.503-1(i)(4). Because Principal did not properly notify Card of an extension, it cannot take advantage of the tolling provision.

The Court understands Principal's frustration due to Card's lack of response to its requests for information. The Court also acknowledges that Principal followed up with Card regarding that information on several occasions and received no response, even after offering to contact the appropriate medical providers directly. (DE 99-3 at 1-2; DE 99-4 at 1; DE 95-2 at 1) At the same time, Principal was on notice that the Department of Labor's ERISA deadlines applied, yet made no apparent effort to comply with the procedures set forth in those regulations. (DE 99-2 at 1-2.) Principal could not expect Card to read between the lines and ascertain its intention to assert an extension, particularly where Principal was aware of the requisite procedures but failed to follow them.

Since Principal did not adequately notify Card of an extension and therefore, could not rely on the tolling provision, Principal had 45 days to decide Card's remaining disability claims. For the sake of argument, parties assume that the clock for Principal's determination started ticking on December 12, 2019, the date on which the Sixth Circuit issued its mandate. (DE 95 at 2.) At latest, Principal was required to make its determination by January 26, 2020. It failed to do so. Consequently, the Court deems Card to have exhausted her

26

administrative remedies, and she may pursue judicial relief in this Court.  Accordingly, the Court grants her motion to reopen.

### B.     On judicial review, the Court will consider Principal's most recent denial of Card's claims.

Although Principal did not issue its determination by the ERISA-mandated deadline, Principal later denied Card's claims on May 7, 2020.  (DE 101-1.)  Principal filed the denial letter with the Court after Card filed her motion to reopen.  (*Id.*)  The Court is left to decide whether it may consider this final decision on review, even though it was issued after Card filed her motion to reopen.

Neither party has submitted case law speaking to a similar fact pattern.  However, the Court located cases with similar factual scenarios, including in the Eastern District of Kentucky and elsewhere in the Sixth Circuit, where the court allowed consideration of a plan administrator's final decision after the claimant's administrative remedies were deemed exhausted and the lawsuit was filed.  *Van Winkle v. Life Ins. Co. of N. Am.*, 944 F. Supp. 2d 558, 563 (E.D. Ky. 2013) (allowing consideration of evidence relied upon in plan administrator's untimely decision); *see also Rossiter v. Life Ins. Co. of N. Am.*, 400 F. Supp. 3d 669, 678 (N.D. Ohio 2019) ("However, several courts, including some in the Sixth Circuit, have considered evidence and decisions by plan administrators in ERISA cases created and adduced after the suit was filed."); *Vugrin v. Stancorp Fin. Grp., Inc.*, No. CIV 13-0972 KBM/KK, 2014 WL 11497819, at *4 (D.N.M. Nov. 4, 2014) ("The Court concludes that evidence available to the administrator up until its [final] decision actually denying benefits is properly considered by this Court.").

This Court will follow that precedent.  Though late, Principal still issued a final decision on Card's claims on remand, as originally contemplated by the Sixth Circuit.  This is not an instance where the Court is expanding the administrative record to include evidence

that was unavailable before Principal issued its determination.  Rather, this allows the Court to review that determination.  "The Court's task is to review the ultimate decision denying [Card's] benefits," and this result ensures that the Court completes that task.  *Rossiter*, 400 F. Supp. 3d at 678.  This outcome is also fair, given that Card's failure to provide updated medical information to Principal may have delayed Principal's determination and that both parties will have access to the complete administrative record before any substantive briefing occurs.

Upon reopening this case, the Court will consider Principal's most recent denial as the operative determination, and judicial review will be based on that determination.   In reviewing this determination, the Court will consider any evidence available to Principal before it issued its final decision on May 7, 2020.

## IV.   Conclusion

Accordingly, the Court hereby ORDERS as follows:

1.   Plaintiff Susan Card's motions for attorney's fees (DE 89) and to reopen (DE 95) are GRANTED.  She is AWARDED $47,635.00 in attorney's fees and $857.92 in costs.

3.   Counsel for the parties SHALL CONFER and FILE a written joint report setting out the appropriate standards of review, and shall FILE the record that was before the plan administrator within **thirty (30) days** from the entry of this order.  If parties are unable to agree on the appropriate standards of review, each party SHALL FILE a brief not to exceed five (5) pages setting forth their position regarding the standard of review within **forty-five (45) days** from the entry of this order.

4.   Plaintiff SHALL FILE a motion for judgment reversing the administrative decision within **60 (sixty) days** from the entry of this order.

5.     Defendant SHALL FILE a response within **thirty (30) days** after the filing of Plaintiff's motion.

6.     Plaintiff MAY FILE a reply within **fifteen (15) days** after the filing of Defendant's response.

7.     Upon the filing of the above briefings, the case shall stand submitted.

This 27th day of October, 2022.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY