UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| SUSAN CARD *also known as* Karen Card, | CIVIL ACTION NO. 5:15-139-KKC |
|     Plaintiff, | |
| v. | **OPINION AND ORDER** |
| PRINCIPAL LIFE INSURANCE COMPANY, | |
|     Defendant. | |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on Defendant Principal Life Insurance Company's motion to alter and amend the Court's October 27, 2022 Opinion (DE 112) and Plaintiff Susan Card's motion for judgment (DE 117). For the following reasons, the Court denies the motion to alter and amend, and grants in part and denies in part the motion for judgment.

## I.     Facts

The history of this case is extensive, and the Court has discussed the facts of the case at length in its prior opinions in this matter. Accordingly, the Court will focus only on the facts most salient to the instant motions.

### A.     Procedural History

#### 1.     Initial Motions for Summary Judgment

On May 17, 2015, Plaintiff Susan Card filed her initial complaint against Defendant Principal Life Insurance Company ("Principal"), seeking judicial review of Principal's denial of her claims for disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. (DE 1; DE 3 ¶¶ 4, 7-8.) Principal is the underwriter, insurer, and administrator of disability benefits provided by Card's employer. (DE 3 ¶ 7.)

Following the conclusion of discovery, parties filed cross-motions for summary judgment. (DE 68; DE 71.) The Court granted summary judgment for Principal, finding that the arbitrary and capricious standard of review was appropriate and concluding that Principal's denial of disability benefits was supported by "substantial evidence." (DE 81 at 4-7.) Card appealed (the "First Appeal"). (DE 83.)

On the First Appeal, the Sixth Circuit affirmed the Court's standard of review analysis and applied the arbitrary and capricious standard of review. (DE 85 at 6.) The Sixth Circuit also determined that Principal's denial was arbitrary and capricious because, among other things, Principal: (1) failed to adequately account for the strength level required by Card's job duties as a licensed practical nurse and a charge nurse; (2) disregarded the restrictions placed on Card's exertional level by her treating physician; (3) ignored the restrictions from Card's treating physician limiting her exposure to persons with infection and disease; (4) based its denial on Card's failure to show that she was under "the Regular and Appropriate Care of a Physician" but provided no evidence to show that Card failed to follow the treatment plans of her physicians or failed to attend her appointments as directed; (5) relied on the opinions of its own file reviewers over the opinions of Card's treating physicians without providing an explanation for that preference; (6) based its denial solely on Card's medical records; (7) failed to consider Card's ability to perform her job duties in light of her diagnosis of chronic lymphocytic leukemia and its resulting symptoms; and (8) relied on file reviewers that failed to critically assess Card's health issues against the actual demands of her job. (*Id.* at 14-20.) Accordingly, the Sixth Circuit vacated the judgment and "remand[ed] the case to [Principal] for further proceedings." (*Id.* at 21.) The Sixth Circuit issued its mandate on December 12, 2019. (DE 88.)

2

Case: 5:15-cv-00139-KKC   Doc #: 138   Filed: 09/05/23   Page: 3 of 32 - Page ID#: 3828

2.      **Remand Review**

Following the remand from the Sixth Circuit, Principal approved Card's claim for short term disability benefits ("STD").  (Administrative Record Supplement [hereinafter "AR Suppl."] at 1670.)   In the approval letter dated December 18, 2019, Principal requested various medical information from Card's counsel so that it could review her remaining claims for long term disability ("LTD") and life coverage during disability ("LCDD") benefits.  (*Id.*)  Specifically, Principal requested medical records from all providers from January 1, 2015, through the current date; pharmacy records from January 1, 2015, through the current date; a copy of Card's Social Security claim file; and a completed HIPAA form.  (*Id.*)  Card's counsel responded to the letter on December 27, 2019, stating that Principal was "already in possession of the information it had when it terminated Ms. Card's benefits—the only information Principal previously believed necessary to render its decisions."  (*Id.* at 1659.)  Counsel noted that Card would respond to Principal's request for information "shortly."  (*Id.* at 1660.)  Principal replied on January 8, 2020, informing Card's counsel that the requested information was necessary for evaluation of Card's LTD claim because Principal only had medical documentation for her through January 1, 2015.  (*Id.* at 1655-56.)  Card sent a signed authorization for the release of her medical information to Principal on January 13, 2020.  (*Id.* at 1632.)  Principal followed up regarding the requested information on January 17, 2020, and asked for a list of her providers with their contact information so that Principal could request Card's medical records directly.  (*Id.* at 1629.)  According to records maintained by Principal for Card's claims, Principal also followed up via phone with Card's counsel to inquire about the status of her records on February 13, 2020, and February 17, 2020.  (*Id.* at 1598.)

On February 26, 2020, Card filed a motion to reopen her case.  (DE 95.)  At that time,

Card had only provided Principal with a copy of her exception request and her executed HIPAA release form.  (DE 101-1 at 6.)  Card had not provided any other information that Principal had requested from her, nor had Principal issued any decision on her claims for LTD and LCDD benefits.  (*Id.*)  On May 7, 2020, Principal formally denied Card's claims for LTD and LCDD benefits.  (DE 101-1.)

In addition to the motion to reopen, Card also filed a separate motion to recover the attorney's fees and costs incurred in achieving a remand during the First Appeal.  (DE 89.)  The Court denied both motions, finding that it lacked jurisdiction to consider them because the Sixth Circuit had instead remanded the matter directly to Principal.  (DE 103.)  Card appealed that decision (the "Second Appeal").  (DE 104.)

###    3.    The Second Appeal

On the Second Appeal, the Sixth Circuit vacated the Court's order, concluding that the Court had jurisdiction to consider Card's motions.  (DE 106 at 8.)  In its opinion, the Sixth Circuit noted that it has "uniformly reversed and remanded . . . case[s] to the district court with instructions that the district court, in turn, remand the beneficiary's claim to the administrator."  (*Id.* at 6.)  In those instances, "the district court retains jurisdiction over the case while the administrator reassesses its benefits decision."  (*Id.*)  However, the Sixth Circuit stated that "on its face," its prior opinion "seemed to engage in a previously unheard-of procedural innovation[,]" and "phrased its 'decretal language' in a way that . . . sowed great confusion.  "(*Id.* at 7.)  The opinion then clarified:

> As in every other ERISA case in this procedural posture, we interpret our prior decision as remanding to the district for it to retain jurisdiction while [Principal] engaged in the new benefits determination.  The district court thus had jurisdiction to consider Card's motions to reopen and for attorney's fees.
>
> **We vacate the district court's order and remand for consideration of Card's motions.**

4

(*Id.* at 8 (emphasis added).   Card's case was therefore remanded once again.

### 4.    Motions for Attorney's Fees and to Reopen

After the Sixth Circuit's decision on the Second Appeal, the Court granted Card's motion for attorney's fees and motion to reopen.   (*See* DE 110.)   The Court concluded that Card achieved "some degree of success on the merits" in connection with the Sixth Circuit's first remand of her case, and that an award of attorney's fees and costs was warranted.   (*Id.* at 6-12.)   In calculating the amount of fees owed, the Court relied on a reasonable hourly rate of $525/hour for attorney Michael Grabhorn because Principal failed to submit any evidence disputing that this was the prevailing market rate for attorneys performing similar work in Eastern Kentucky.   (*Id.* at 14.)   Moreover, the Court used its discretion to rely upon Mr. Grabhorn's current hourly rate to account for the years-long delay in payment of the fees. (*Id.* at 14-15.)

The Court also deemed Card to have exhausted her administrative remedies for her claims because Principal did not issue a determination of her claims within the Department of Labor's 45-day deadline for ERISA claims.   (*Id.* at 23-27.)   This meant that Card could seek judicial review of her claims, and the Court reopened her case.   (*Id.* at 26-27.)   Nonetheless, Principal's May 7, 2020 denial letter was the "operative denial" of her claims.   (*Id.* at 28.)

## B.    Instant Motions

Principal now moves to alter and amend the Court's October 27, 2022 Opinion granting Card's motion for attorney's fees and motion to reopen.   (DE 112.)   Card also moves for a judgment reversing Principal's denial of her claims.   (DE 117.)

1.      **Relevant Plan Provisions**

The Plan provides:

A Member[1] will qualify for Disability benefits if all of the following apply:

a.      The Member is Disabled under the terms of this Group Policy.

b.      The Disability begins while he or she is insured under this Group Policy.

c.      The Disability is not subject to any Limitations listed in this PART IV, Section O.

d.      An Elimination Period of 90 days is completed.

e.      A Benefit Payment Period is established.

f.      The Member is in the Regular and Appropriate Care of a Physician.

g.      The claim requirements listed in this PART IV, Section Q are satisfied.

(Administrative Record [hereinafter "AR"] at 137, PART IV, Section A, Article 1.)

Under Principal's LTD Policy, a Member is considered Disabled if she "cannot perform the majority of the Substantial and Material Duties of [her] Own Occupation" during the Elimination Period and the Own Occupation Period.  (*Id.* at 110, PART I.)  After completing the Elimination Period and the Own Occupation Period, the Member only qualifies for LTD benefits if  she "cannot perform the majority of the Substantial and Material Duties of any Gainful Occupation for which [she] is or may reasonably become qualified based on education, training, or experience."  (*Id.*)  Pursuant to Principal's LCDD Policy, a member qualifies for

---

[1] The Plan defines a "Member" as "Any PERSON (OTHER THAN DIRECTOR, MGMT OR ADMIN), residing in the United States, who is a U.S. citizen or is legally working in the United States, who is a full-time Employee of the Policyholder or a Participating Unit and who regularly works at least 24 hours a week."  (AR at 13.)  Parties do not appear to dispute that Card is a Member under the Plan, so the Court assumes the same.

LCDD if she:

> (1) become[s] Totally Disabled while insured for Member Life Insurance; and
> (2) become[s] Totally Disabled prior to the attainment of age 60; and
> (3) remain[s] Totally Disabled continuously; and
> (4) [is] under the regular care and attendance of a Physician; and
> (5) send[s] proof of Total Disability to the Principal when required; and
> (6) submit[s] to Medical Examinations or Evaluation[s] when required; and
> (7) return[s] to [Principal], without claim, any individual policy issued under his or her Individual Purchase Rights . . .

(*Id.* at 248.)  A Member is "Totally Disabled" if she is unable, "due to sickness or injury, to perform the majority of the material duties of any occupation for which [she] is or may reasonably become qualified based on education, training, or experience." (*Id.* at 220.)

PART IV, Section Q includes several provisions that require Members to submit proof of their claim.  Upon request, "[f]urther proof that the Disability has not ended must be sent." (*Id.* at 154, PART IV, Section Q, Article 3.)  "Failure to comply with the request of [Principal] could result in declination of the claim." (*Id.*)  The Plan also requires Members to submit "satisfactory Written proof of loss" to Principal. (*Id.*, Part IV, Section Q, Article 3A.)  Proof of loss may include, among other things, "[d]ocumentation that the Member is under Regular and Appropriate Care by a Physician;" "[c]opies of medical records, test results and/or Physician's progress notes;" or "[o]ther proof of loss as required by [Principal]." (*Id.* at 154-55.)  Principal will not pay any benefits until it receives the requested proof of loss. (*Id.* at 154.)  Moreover, even after a claim is approved, "no benefits will be continued beyond the end of the period for which the Member has provided [Principal] with satisfactory proof of loss." (*Id.* at 155, PART IV, Section Q, Article 3C.)  As reiterated in PART IV, Section M, Article 1 of the Plan, "in no event, will benefits continue beyond . . . the date the Member fails to provide any required proof of Disability . . ." (*Id.* at 147, PART IV, Section M, Article 1.)

7

## 2.    Principal's May 7, 2020 Denial Letter

In its May 7, 2020 denial letter, Principal formally denied Card's claims for LTD and LCDD benefits.  (DE 101.)  Principal relied upon the exact same file reviewers from its initial denial of Card's claims and the exact same reports created by these file reviewers.  (*Compare* DE 101-1 at 2 *with* AR at 541-42, 563-68, 579-87, 853-57, 831.)  These file reviewers were Dr. Polanco, Dr. Antin, and Dr. Chedid.  (*Id.*)  In concluding that Card was not eligible for LTD or LCDD benefits, Principal assessed Card's eligibility for benefits based solely on her objective medical records.  (DE 101-1 at 1-2, 4.)  Principal also used a prior occupational analysis that found that Card's job as a licensed practical nurse was a "Medium Strength" occupation.  (*Id.* at 3.)

In its analysis of Card's claims, Principal briefly addressed the opinion of Card's treating physician, Dr. Baum, stating,

> Dr. Baum provided restrictions which indicated Ms. Card could not perform even sedentary work.  He also indicated she was unable to be exposed to sick patients due to her diagnosis.  However, these restrictions are not supported since Ms. Card's medical records did not demonstrate any clinical or diagnostic findings that supported that her condition was functionally impairing, including her inability to be exposed to sick patients.  This is evidenced in the reports from Dr. Polanco, Dr. Antin and Dr. Chedid.

(*Id.* at 4.)  Principal also mentioned Card's subjective complaints of her chronic lymphocytic leukemia ("CLL") symptoms in passing, writing, "Dr. Chedid notes that while Ms. Card complained of severe fatigue, exhaustion and weakness, her CBC is essentially normal and from an oncology standpoint, there were no clinical findings to support any functional limitations or physical restrictions due to her chronic lymphocytic leukemia."  (*Id.* at 2.)  Principal found that Card had no restrictions or limitations that prevented her from performing "medium strength" work, as required to qualify for LTD benefits.  (*Id.* at 4.)  For the same reason, Principal found that Card was not prevented from performing "[A]ny

[O]ccupation" with regard to her LCDD claim.  (*Id.*)

Principal further noted that it requested updated medical information from Card and that Card's claim file did not contain any medical records from providers beyond December 2014.  (*Id.* at 1-2.)  Principal outlined all of the instances in which it contacted Card in order to obtain that information.  (*Id.* at 6.)  Principal cited to Section Q, Article 3 of the Plan and stated that it "must receive satisfactory Documentation of Loss" for Card to qualify for benefits.  (*Id.* at 5-6.)  Principal concluded,

> Since we have not been provided with updated medical information, and we have not been provided with a list of medical providers to request updated medical information from, despite our multiple requests to you, we have completed our review of Ms. Card's claim based on the medical [information] contained in the claim file, which is dated through December 19, 2014, and her LTD and LCDD claims are denied.

(*Id.* at 6.)

## II.    Motion to Alter and Amend

Pursuant to Federal Rule of Civil Procedure 59(e), a party must file a motion to alter and amend[2] "no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e). The standard for a motion to alter and amend under Rule 59(e) is "necessarily high."  *Hewitt v. W. & S. Fin. Grp. Flexibly Benefits Plan*, CIVIL ACTION NO. 16-120-HRW, 2017 WL 2927472, at *1 (E.D. Ky. July 7, 2017).  The moving party may not use a Rule 59(e) motion as a tool to "re-litigate issues the Court previously considered."  *Id.* at *1.  A court may only grant a Rule 59(e) motion if the moving party sets forth (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in the controlling law; or (4) a manifest injustice.  *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted).

---

[2] Such a motion is also known as a motion for reconsideration, so the Court will use the terms interchangeably.

A.    **Timeliness of Motion**

Before reaching the merits of the motion, the Court must consider Card's argument that Principal's motion to alter and amend the Court's October 27, 2022 Opinion is untimely. Card argues that Principal was required to file its motion by Friday, November 25, 2022, the day after Thanksgiving.  (DE 116 at 5.)  Principal argues that the deadline was Monday, November 28, 2022, the day it filed the motion.  (DE 121 at 5-6.)

The Court entered the relevant opinion on October 27, 2022, so Principal had 28 days after that date to file its motion.  *See* Fed. R. Civ. P. 59(e).  The 28-day deadline fell on Thursday, November 24, 2022, which was the Thanksgiving holiday.  Under the Local Rules, "[w]hen any period of time set by Order of the Court or otherwise ends on a date certain and that date certain falls upon a Saturday, Sunday or legal holiday, the period of time continues to run until the end of the next day that is not a Saturday, Sunday or legal holiday."  Local Rule 6.2.  Thanksgiving is undisputedly a legal holiday.  Fed. R. Civ. P. 6(a)(6)(A).[3]  The question is whether the Friday after Thanksgiving constitutes a "legal holiday."

Under Federal Rule of Civil Procedure 6(a)(6)(C), a "[l]egal holiday" includes "for periods that are measured after an event, any other day declared a holiday by the state where the district court is located." Fed. R. Civ. P. 6(a)(6)(C).  Kentucky state law closes state offices and provides state employees with a holiday on "[t]he fourth Thursday in November plus one (1) extra day."  Ky. Rev. Stat. § 18A.190(1)(i).[4]  Presumably, that "extra day" is the Friday

---

[3] "'Legal holiday' means . . . the day set aside by statute for observing . . . Thanksgiving Day[.]" Fed. R. Civ. P. 6(a)(6)(A).

[4] In her response, Card includes language from the Western District of Kentucky's online court calendar stating that the Friday after Thanksgiving is an "administrative leave" day that does not qualify as a legal holiday for purposes of calculating time under the Federal Rules of Civil Procedure.  (DE 116 at 5-6.)  Upon review of the calendar, the Court cannot locate this language.  In any event, while the Eastern District of Kentucky jointly shares Local Rules with the Western District of Kentucky, this Court is not convinced that such a

after Thanksgiving.  The Kentucky state government website for state employees lists the Friday after Thanksgiving as a state holiday.  *Holidays & Leave*, Team Kentucky Personnel Cabinet, https://personnel.ky.gov/Pages/Holidays-and-Leave.aspx.  And at least one other court in this district has recognized that "the Friday after Thanksgiving has been declared a holiday in the state of Kentucky."  *Crawford v. Tilley*, Civil Action No. 5:18-cv-623-CHB, 2020 WL 6947479, at *10 (E.D. Ky. Nov. 25, 2020), *rev'd on other grounds by* 15 F.4th 752 (6th Cir. 2021).

Based on Kentucky state law and consistent with the interpretation of that law by the Kentucky state government and other courts in this district, this Court agrees that the Friday after Thanksgiving is a "legal holiday" for purposes of calculating time.  Therefore, Principal needed to file its motion to alter and amend by Monday, November 28, 2022.  Because Principal filed its motion by that date, the motion is timely, and the Court may properly consider it.

## B.    Grounds for Reconsideration

Principal brings it motion to alter and amend the Court's October 27, 2022 Opinion on the following grounds: (1) the Court never remanded the case back to Principal for review; (2) Principal "waited" for a directive and remand from this Court before beginning its review of Card's claims and was "confused" about the proper timing of the review; (3) the Court relied upon case law that post-dated Principal's actions on remand; and (4) the Court overlooked case law mandating that an attorney's hourly rate at the time he performed the work governs the fee award rather than the hourly rate at the time the motion was filed.  (DE 112 at 1-2, 5-8.)  While Principal does not identify the basis for its Rule 59(e) motion, the Court assumes

---

policy, located outside the four corners of the Joint Local Rules, is binding on the courts of this district.

Principal files the motion based on either a clear error of law or a manifest injustice.  *See*

*GenCorp, Inc.*, 178 F.3d at 834.

> **1.      The Court's Lack of Remand to Principal**

Principal's first two objections go hand and hand, so the Court will address them

together.  The gist of these arguments is that Principal claims that it never knew when it

was supposed to start its review on remand, so the Court should not penalize Principal for

its late decision under the Department of Labor's guidlines given this lack of clarity.  (DE

112 at 5-7.)

Principal misconstrues the nature of the Sixth Circuit's opinion reversing this Court's

holding that it lacked the jurisdiction to consider Card's motions for attorney's fees and to

reopen the case.  While the Sixth Circuit noted the "confusion" associated with its prior

opinion that "'remand[ed] the case to [Principal] for further proceedings'" and recognized that

cases are typically remanded to "the district court with instructions that the district court, in

turn, remand the beneficiary's claim to the administrator," the issue in front of the Sixth

Circuit was not whether the Court needed to remand the case back to Principal in this

instance. (DE 106 at 3, 6-7.)  The customary remand did not and could not happen due to the

confusion over the verbiage in the Sixth Circuit's initial opinion.  Instead, the narrow issue

on the Second Appeal was whether the Court *lacked jurisdiction* to consider Card's motions

for attorney's fees and to reopen the case.  This is reflected in the language of the Sixth

Circuit's opinion for the Second Appeal, which stated that "we interpret our prior decision as

remanding to the district [court] for it to retain jurisdiction *while [Principal] engaged in the*

*new benefits determination*." (DE 106 at 8 (emphasis added).)  The Sixth Circuit accordingly

held that "[t]he district court thus had jurisdiction to consider Card's motions to reopen and

for attorney's fees" and therefore, "vacate[d] the district court's order and remand[ed] for

consideration of Card's motions." (*Id.*)  The Sixth Circuit never directed this Court to remand

the matter back to Principal again.  By considering Card's motions instead of remanding the case to Principal, the Court complied with the Sixth Circuit's precise directive.

To the extent that Principal argues that it was "waiting" for a remand from this Court before ruling on Card's claims, that argument is disingenuous and belied by the record.  While the motion to reopen was still pending, Principal issued its decision letter denying Card's claims.  (DE 101.)  If Principal was, in reality, waiting for a remand from the Court before reviewing Card's claims, the Court questions why Principal issued a decision at all.  Neither Principal's response to the motion to reopen nor its brief for the Second Appeal mention any argument that Principal was awaiting a remand from this Court before acting.  Instead, Principal relied on the (albeit incorrect) assumption that the Sixth Circuit remanded Card's claims directly back to Principal for review.  In its response to the motion to reopen, Principal argued that "not only was it not the District Court, who remanded the case, but the Appeals Court, which vacated the District Court's judgment, holding that instead, the case should have been remanded to [Principal] for further review."  (DE 98 at 4.)  Likewise, during oral argument for the Second Appeal, Principal stated, "The language of the decision . . . remanded it directly to the claims administrator, which is certainly what [the Court] picked up on and decided to base [its] ruling on."   Oral Argument at 16:08-16:23, Susan Card v. Principal Life Insurance Co. (6th Cir. 2021) (No. 20-6217).  Principal's position is reiterated in its appellate brief, where it similarly argued that the Sixth Circuit "remanded the case directly to [Principal] for further proceedings" and that Card "implicitly agreed with this premise when she argued that the time frame for [Principal] to conduct its remand review of [her] claim began on the date the mandate was issued – rather than at the date the district court takes action."   Brief of Defendant-Appellee at 39, Susan Card v. Principal Life Insurance Company, No. 20-6217 (6th Cir. 2019), ECF No. 14.  Principal cannot now manufacture confusion post hoc to avoid the Department of Labor's mandatory deadlines.

Therefore, the Court cannot reconsider its October 27, 2022 Opinion on either ground.

**2.      Applicability of Subsequent Case Law**

Next, Principal argues that, at the time it performed its remand review of Card's claims in 2019 and 2020, Kentucky federal courts had yet to issue any clear case law regarding whether the Department of Labor's deadlines for ERISA claims applied to determinations conducted after a court-ordered remand.  (DE 112 at 7-8.)  In holding that the deadlines applied to Principal's remand review, the Court relied on, in part, *Bustetter v. Standard Ins. Co.*, 529 F. Supp. 3d 693 (E.D. Ky. 2021), a case decided in 2021.  According to Principal, this left it with "no notice that district courts in Kentucky would apply the Department of Labor claims regulations to a remand review and the timing of its determination."  (DE 112 at 8.)  However, in addition to *Bustetter*, the Court also relied on *Solnin v. Sun Life & Health Ins. Co.*, 766 F. Supp. 2d 380 (E.D.N.Y. 2011), *Robertson v. Standard Ins. Co.*, 218 F. Supp. 3d 1165 (D. Or. 2016), and *Spears v. Liberty Life Assurance Co. of Bos.*, CIVIL ACTION NO.: 3:11-cv-1807 (VLB), 2019 WL 4766253, at *29 (D. Conn. Sept. 30, 2019), all of which proceeded Principal's remand review.[5]  In fact, both parties discussed *Solnin*, *Robertson*, and *Spears* in their motion to reopen filings.  (DE 95 at 3-4; DE 98 at 3-6; DE 100 at 2-3; DE 110 at 24.)  In its response to the motion to reopen, Principal did not cite to any case law finding that the Department of Labor's deadlines do not apply to determinations made post-remand, and in the instant motion, Principal continues to fail to cite any case law to support its position.  Based on case law existing at the time of its remand review, Principal was on notice that courts had consistently found that the Department of

---

[5] The Court also relied on *Krysztofiak v. Bos. Mut. Life Ins. Co.*, Civil Action No. DKC 19-0879, 2021 WL 5304011, at *2-*3 (D. Md. Nov. 15, 2021), which was issued after Principal's remand review.  Card notified the Court of this decision by filing a notice of supplemental authority.  (DE 108.)  Principal never objected or otherwise responded to this notice.

Labor's deadlines applied to determinations on remand and could expect this Court to follow suit. Accordingly, the Court denies Principal's motion to alter and amend as to this ground.

### 3.    Hourly Rate

Finally, Principal challenges the Court's decision to calculate attorney' fees using Michael Grabhorn's current hourly rate rather than his hourly rate at the time he performed the relevant work. (DE 112 at 8.) The Court relied on the current hourly rate to compensate for the delay in payment of attorney's fees and costs due to protracted litigation. (DE 110 at 14-15.) Principal argues that because its own actions did not contribute to the delay, the Court should use Mr. Grabhorn's historic hourly rate instead. (DE 112 at 8.) The relevant law does not require the paying party to have contributed directly to the delay in payment in order for the current hourly rate to apply, and Principal does not cite to any case law to the contrary. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 556 (2010); *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005); *Bank One, N.A. v. Echo Acceptance Corp.*, 595 F. Supp. 2d 798, 801 (S.D. Ohio 2009); *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.*, 684 F. Supp. 953, 958 (N.D. Ohio 1988). In any case, "parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007). In its motion to reopen briefing, Principal could have argued that calculating Card's attorney's fees based on her attorney's current hourly rate was inappropriate because Principal did not contribute to any delay in litigation, but Principal never raised this argument. The argument comes too late.

Accordingly, the Court also declines to reconsider its October 27, 2022 Opinion on this ground. Therefore, the Court denies Principal's motion to alter and amend the Court's October 27, 2022 Opinion in its entirety.

15

### III.    Standard of Review

Before reviewing Principal's denial of Card's LTD and LCDD claims, the Court must determine what standard of review applies.  Card maintains that the proper standard of review is *de novo* review (DE 114), while Principal maintains that the proper standard of review is arbitrary and capricious review (DE 115).  Card argues that *de novo* review is warranted because Principal failed to issue a timely decision on her claims in violation of the Department of Labor's guideline, specifically, 29 C.F.R. § 2560.503-1.  (DE 114 at 4.)  The standard of review depends on whether the 2002 version or the 2018 version of § 2560.503-1 applies.

Both versions of § 2560.503-1 provide:

> [I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

§ 2560.503-1(l)(1) (2018); § 2560.503-1(l) (2002).  In its October 27, 2022 Opinion, the Court deemed Card to have exhausted her administrative remedies pursuant to this regulation because Principal failed to issue its determination of her claims on remand by the Department of Labor's deadlines.  (DE 110 at 26-27.)  This allowed Card to pursue judicial review of her claims once again.  (*Id.*)

However, the 2018 version of § 2560.503-1 contains an additional provision, which states:

> In the case of a claim for disability benefits, if the plan fails to strictly adhere to all the requirements of this section with respect to a claim, the claimant is deemed to have exhausted the administrative remedies available under the plan . . . . Accordingly, the claimant is entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.  If a claimant chooses to pursue remedies under section 502(a) of the Act

under such circumstances, **the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary**.

§ 2560.503-1(l)(2)(i) (emphasis added). Therefore, if subsection(l)(2)(i) applies, Card is entitled to *de novo* review. But subsection (l)(2)(i) only applies to "claims for disability benefits filed under a plan after April 1, 2018." § 2560.503-1(p)(3). The 2002 version of the regulations does not contain a provision similar to subsection (l)(2)(i). The determinative question becomes, when did Card "file[]" her claims for LTD and LCDD benefits?

Under both the 2002 and 2018 versions of § 2560.503-1, "a claim for benefits is a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims." § 2560.503-1(e) (2018); § 2560.503-1(e) (2002). "[N]ot all interactions with an administrator constitute new 'claims for benefits' after a party files an initial claim." *Smith v. Hartford Life & Accident Ins. Co.*, 421 F. Supp. 3d 416, 419 (E.D. Ky. 2019). "Instead, subsequent interactions only constitute claims when they are actually *new* requests for plan benefits." *Id.* (emphasis added).

Card contends that the Sixth Circuit's initial mandate essentially constituted a "claim" because it was a request for plan benefits. (DE 114 at 4.) Because the mandate issued on December 12, 2019, Card argues that her claim for benefits was made the same day, so the 2018 version of the regulations governs her claims. (*Id.*) Based on Card's theory, 2560.503-1(l)(2)(i) would apply, and *de novo* review would be the proper standard of review. Principal disagrees, stating that Card instead filed her claim for benefits in 2013, when she first submitted her disability benefits claims before seeking judicial review. (DE 115 at 4.) Therefore, according to Principal, the 2002 version of the regulations applies. (*Id.* at 3-5.)

Card overlooks the fact that, on remand, Principal was not reviewing a *new* request for benefits, and she fails to provide any evidence that she filed any new requests. Instead, as correspondence between the parties shows, Principal was evaluating Card's previously

submitted LTD and LCDD claims.  Shortly after the Sixth Circuit remanded Card's claim, Principal reached out to Card, requesting updated medical information to further evaluate her claims.  (AR Suppl. at 1670.)  Card responded that "Principal [was] already in possession of the information it had when it terminated Ms. Card's claims for benefits," which was "the only information Principal previously believed necessary to render its decisions."  (*Id.* at 1659.)  This further indicates that Card believed that Principal was reviewing her *initial* claims on remand.  Moreover, the remand itself cannot constitute a claim for benefits. Accordingly, the Court finds that the relevant claims for review on remand were Card's original requests for LTD and LCDD benefits, which she filed before the Sixth Circuit's remand.  *Smith*, 421 F. Supp. 3d at 420 (declining to find that the claimant requested a new "claim for benefits" where she filed an initial claim in 2001, that same claim was approved in 2007 following an appeal before the Sixth Circuit, and the same claim was denied in 2018 after reevaluation, even though seventeen years elapsed).

Card filed her claim for LTD benefits in September 2014 (AR at 1049) and her claim for LCDD benefits in November 2014 (*id.* at 949).  Because both claims were filed before April 1, 2018, the 2002 version of § 2560.503-1 applies to these claims.  This means that subsection (l)(2)(i) does not apply.

Card contends that even if her claims implicate the 2002 version of § 2560.503-1, the proper standard of review is still *de novo* review.  (DE 114 at 5.)  To support her argument, Card cites to *Bustetter v. Standard Ins. Co.*, 529 F. Supp. 3d 693 (E.D. Ky. 2021).  *Bustetter* held that under the 2002 version of § 2560.503-1, courts should review claims *de novo* if the administrator issued a late decision in violation of the Department of Labor's regulations. *Id.* at 703.

In *Daniel v. Eaton Corp.*, 839 F.2d 263 (6th Cir. 1988), the Sixth Circuit held that the

proper standard of review in instances where an administrator fails to issue a decision on a claim (or, in this case, fails to *timely* issue a decision on a claim) is arbitrary and capricious review, rather than *de novo* review. *Id.* at 267. However, that case involved the pre-2002 version of § 2560.503-1. *Bustetter*, 529 F. Supp. at 702-03. *Bustetter* found that "[i]n light of the substantial changes to the regulations" between the 2002 version of the regulations and its predecessor, *Daniel* does not apply to claims filed after the 2002 version became effective. *Id.* Therefore, the appropriate standard of review for such claims is *de novo* review. *Id.*

Nonetheless, the Eastern District of Kentucky has repeatedly applied *Daniel* as binding precedent for cases involving claims filed between 2002 and April 1, 2018, under the 2002 version of the regulations. *See Martin v. Guardian Life Ins. Co. of Am.*, Civil Action No. 5:20-507-DCR, 2021 WL 2516083, at *3-*4 (E.D. Ky. June 15, 2021) (collecting cases). And other courts in this district have explicitly rejected *Bustetter*, finding that *Daniel* remains binding precedent. *See, e.g. id.* While the Sixth Circuit has previously noted that "there is undeniable logic in the view that a plan administrator should forfeit deferential review by failing to exercise its discretion in a timely manner," it has yet to overturn *Daniel*. *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n.3 (6th Cir. 2000). Absent a Sixth Circuit decision overturning *Daniel*, *Daniel* remains good law and binding precedent that, unlike decisions promulgated by other district court judges, this Court must follow.[6] Consistent with *Daniel*, arbitrary and capricious review is the proper standard of review

---

[6] The Court recognizes that it relied on the same *Bustetter* case in determining that the Department of Labor's deadlines apply to determinations made after a court-ordered remand. (*See* DE 110 at 24.) Unlike the standard of review issue invoked here, that portion of the case implicates an entirely different issue for which no binding Sixth Circuit precedent exists and for which no conflicting case law exists within other district courts in the Circuit. Therefore, the Court finds it appropriate to rely on *Bustetter* as to whether the Department of Labor's deadlines applied but not as to the proper standard of review.

when an administrator fails to timely issue a benefits determination under the 2002 version of the Department of Labor's regulations.

Therefore, this Court will review Principal's denial of Card's LTD and LCDD claims according to the arbitrary and capricious standard of review.

## IV.   Review of Principal's Denial of Card's LTD and LCDD Claims

## A.   Arbitrary and Capricious Standard of Review

The arbitrary and capricious standard is "the least demanding form of judicial review of administrative action." *Farhner v. United Transp. Union Discipline Income Prot. Program*, 645 F.3d 338, 342 (6th Cir. 2011) (citation and quotation marks omitted).   Under this standard of review, a court must uphold the plan administrator's decision "if it is the result of a deliberate, principled reasoning process and is supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (citation and quotation marks omitted).   "Put another way, 'when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious.'"  *Pflaum v. UNUM Provident Corp.*, 175 F. App'x 7, 9 (6th Cir. 2006) (quoting *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000)).   Though the Court's review under the arbitrary and capricious standard is "not without some teeth," it is still extremely deferential.   *See McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014).

## B.   Card's Claims through January 1, 2015

As both parties recognize, Principal only has medical information from Card through January 1, 2015.[7]  (DE 135 at 14; DE 136 at 17.)   Therefore, the Court will separately review

---

[7] While Principal's May 7, 2020 denial letter stated that Card's claim file did not include medical information past December 2014 (*see* DE 101-1 at 1-2), Principal only requested information from January 1, 2015, and beyond (AR Suppl. at 1598, 1629, 1655-56, 1670). Therefore, the Court uses January 1, 2015, as the dividing line for Card's claims.

Principal's denial as it relates to (1) Card's LTD and LCDD claims through January 1, 2015, and (2) Card's LTD and LCDD claims beyond January 1, 2015.

      1.      **Failure to Remedy Prior Deficiencies**

      Unfortunately, on remand, Principal fails to remedy many of the deficiencies that the Sixth Circuit already rendered arbitrary and capricious when reviewing Principal's initial denial of Card's LTD and LCDD claims on the First Appeal.  In several instances, Principal repeats the same mistakes.  "[W]hen a case has been remanded by an appellate court, the trial court is bound to proceed in accordance with the mandate and law of the case as established by the appellate court." *Goldberg v. Maloney*, 692 F.3d 534, 538 (6th Cir. 2012) (citation and quotation marks omitted).  Because the Sixth Circuit already deemed these actions arbitrary and capricious, this Court is bound to do the same.  The Court will further detail each deficiency below.

      a.      **Reliance on Previous Medical Opinions**

      First, the Sixth Circuit found that Principal's initial denial of Card's LTD claims was arbitrary and capricious because Principal's file reviewers failed to "critically assess[] plaintiff's specific health issue, with its attendant fatigue and low resistance to infection, against the actual demands of her job and the profession." (DE 85 at 20.)  During its remand review, Principal relied on the exact same reports from the exact same file reviewers to deny Card's claims, including reports from Dr. Polanco, Dr. Antin, and Dr. Chedid.  (*Compare* DE 101-1 at 2 *with* AR at 541-42, 563-68, 579-87, 853-57, 831.)  If the Sixth Circuit previously found that the failure of these file reviewers to assess Card's health issues against her job demands was arbitrary and capricious, that failure remains arbitrary and capricious in this instance.

      Relatedly, the Sixth Circuit also took issue with the failure of the file reviewers to account for Card's exertional restrictions in their reports. (*See* DE 85 at 16, 18.)  For example,

the Sixth Circuit stated that Dr. Polanco's review only mentioned whether Card could perform "sedentary work" and did not examine if she could perform "medium" strength work. (*Id.*; AR at 855.)  Card's occupation is a "medium strength" occupation.  (DE 85 at 14; DE 101-1 at 3.)  The Sixth Circuit further noted that, in his report, Dr. Chedid "did not offer any explanation" as to why he disregarded the exertional restrictions placed on Card by her treating physician.  (DE 85 at 18; AR at 565, 567.)  Because Principal relied on these same reports during its remand review, Principal's denial as to Card's claims through January 1, 2015, is also arbitrary and capricious on this ground.

The Sixth Circuit further found "problematic" that Principal relied on only "objective evidence" from Card's medical records without regard to her subjective complaints.  (DE 85 at 19.)  On remand, Principal once again denied Card's claims based solely on its file reviewers' assessment of her medical records.  (DE 101-1 at 1-2, 4.)  To the extent the determination denied Card's claims through January 1, 2015, Principal's denial was arbitrary and capricious.

As further explained *supra*, the Court understands that Principal's determination was hindered to the extent that Card failed to provide Principal with the updated medical information it requested from her.  (DE 135 at 14; DE 136 at 17.)  But Principal does not identify any obstacle that prevented it from obtaining a new file review with updated medical opinions that addressed its prior deficiencies based on the information it had through January 1, 2015.  Without updated medical opinions that comply with the Sixth Circuit's directive, Principal's determination was arbitrary and capricious as it relates to Card's LTD and LCDD claims through January 1, 2015.

### b.    Disregard of Treating Physician's Medical Opinion

The Sixth Circuit also found that Principal's initial denial was arbitrary and capricious because Principal relied on the opinions of its own file reviewers over the opinions

of Card's treating physicians without providing an explanation for that preference. (DE 85 at 19.) Specifically, Principal disregarded her treating physician's restrictions on her exertional level and her exposure to infectious persons and diseases. (*Id.* at 16.) In its remand review, Principal fails to correct this error.

On remand, Principal acknowledges the restrictions from Dr. Baum on Card's exertional level and her exposure to sick patients. Principal discounts the restrictions, stating, "[T]hese restrictions are not supported since Ms. Card's medical records did not demonstrate any clinical or diagnostic findings that supported that her condition was functionally impairing, including her inability to be exposed to sick patients. This is evidenced in the reports from Dr. Polanco, Dr. Antin and Dr. Chedid." (DE 101-1 at 4.) Even though Principal references the treating physician's restrictions, it still fails to explain why it gave more weight to the reports from its file reviewers over the opinion of Card's treating physician. Principal did not require updated information from Card to provide a sufficiently detailed explanation about why it gave preference to its file reviewers. For this separate reason, Principal's denial of Card's LTD and LCDD claims was also arbitrary and capricious as to Card's claims through January 1, 2015.

The Court makes one additional note: Principal provides a detailed, logical explanation for why it relied on the opinions of its file reviewers over the opinion of Dr. Baum in its response to Card's motion for judgment. (*See* DE 135 at 22-24.) The Court's task is to review Principal's actual determination, and Principal's denial letter did not contain the same level of detail. Based solely on its review of Principal's denial letter, the Court finds that Principal's explanation was insufficient.

### c.    Failure to Discuss Chronic Lymphocytic Leukemia

Finally, the Sixth Circuit also concluded that Principal's initial denial was arbitrary and capricious because the denial did not consider Card's ability to function in a "medium

strength" work environment in light of the fatigue and weakness that result from her chronic lymphocytic leukemia ("CLL") diagnosis.  (DE 85 at 18-19.)  On remand review, Principal mentions Card's CLL diagnosis and her complaints of fatigue and weakness.  (DE 101-1 at 2.)  But Principal fails to address how her reported symptoms would impact her ability to perform her job duties, yet again relying solely on a lack of clinical findings to support its conclusion that Card's diagnosis does not create any limitations.  (*Id.* at 2.)  Since Principal did not follow the Sixth Circuit's instruction to consider Card's reported CLL symptoms against the demands of her job, Principal's subsequent denial was arbitrary and capricious on this additional ground as it relates to Card's LTD and LCDD claims through January 1, 2015.

Due to the failure of Principal's remand review to comport with the Sixth Circuit's directives, the Court finds that its subsequent denial was arbitrary and capricious to the extent that the determination denied Card's LTD and LCDD claims through January 1, 2015.[8]  The Court grants judgment in favor of Card as to those claims.[9]

## C.    Card's Claims beyond January 1, 2015

To the extent that Card seeks LTD and LCDD beyond January 1, 2015, Principal's decision to deny those claims was not arbitrary and capricious.  In its denial letter, Principal denied Card's claims, in part, based on her failure to provide satisfactory proof of loss for her

---

[8] Card raises additional arguments regarding Principal's purported violation of its exception procedure, its additional alleged violations of ERISA claim regulations, and its failure to address her award of Social Security Disability Income benefits.  (DE 117 at 19-23.)  Because the Court has already found that Principal's denial was arbitrary and capricious as to Card's LTD and LCDD claims through January 1, 2015, based on the established law of the case, the Court need not consider these arguments.

[9] To the extent Principal contends that Card's claims fail because she did not establish that she was under the "Regular and Appropriate Care of a Physician," that argument was not raised in its denial letter, and therefore, is not properly before the Court for review.  (DE 135 at 16, 24-25.)

claims.  (DE 101-1 at 6.)  In doing so, Principal cited to Section Q, Article 3 of the Plan, which sets forth certain claim requirements that Card must satisfy to qualify for benefits.  (*Id.* at 5-6; AR at 137, PART IV, Section A, Article 1.)  Principal reiterated that it "must receive satisfactory Documentation of Loss" for Card to qualify for benefits and listed its attempts to contact her for appropriate medical documentation to no avail.  (DE 101-1 at 6.)  Principal accordingly reviewed Card's claims based on the medical information it had through December 2014.  (*Id.*)  Principal denied Card's claims "[s]ince [it had] not been provided with updated medical information, and [it had] not been provided with a list of medical providers to request updated medical information from."  (*Id.*)

Principal's decision to deny Card's claims beyond January 1, 2015, was reasonable, according to the terms of the Plan and Card's failure to adhere to the requirements necessary to qualify for LTD and LCDD benefits.  The Plan provides that a Member will only qualify for Disability benefits if, in addition to other requirements, she satisfies the claim requirements in PART IV, Section Q.  (AR at 137, PART IV, Section A, Article 1.)  PART IV, Section Q contains two related provisions that require Card to submit proof of her claims.

First, when requested by Principal, Card must send "[f]urther proof that the Disability has not ended."  (AR at 154, PART IV, Section Q, Article 3.)  "Failure to comply with the request of [Principal] could result in declination of the claim."  (*Id.*)  No less than five times, Principal requested that Card submit further proof of her Disability because her file only included medical documentation of her alleged Disability through January 1, 2015.  (AR Suppl. at 1598, 1629, 1655-56, 1670.)  Card does not deny that she did not submit the requested information to Principal.  (DE 136 at 17.)  Based on the terms of the Plan, it was not arbitrary and capricious for Principal to deny Card's LTD and LCDD claims beyond January 1, 2015, because she undisputedly failed to comply with Principal's multiple requests for information.

Second, the Plan also requires the Member to submit "satisfactory Written proof of loss" to Principal. (*Id.*, Part IV, Section Q, Article 3A.) Proof of loss may include"[c]opies of medical records, test results and/or Physician's progress notes" or "[o]ther proof of loss as required by [Principal]." (*Id.* at 154-55.) Again, on five occasions, Principal requested that Card submit updated medical records, updated pharmacy records, and her Social Security claim file. (AR Suppl. at 1598, 1629, 1655-56, 1670.) The requested information fell within the categories of proof of loss acceptable under the Plan. Again, Card admittedly never submitted the requested information. Because Card failed to submit satisfactory proof of loss as required under the Plan, Principal's decision was not arbitrary and capricious as it relates to the denial of her LTD and LCDD claims beyond January 1, 2015.

Since Card did not satisfy the claim requirements set forth in PART IV, Section Q of the Plan, she plainly did not qualify for LTD and LCDD benefits according to the terms of the Plan. Therefore, Principal's determination that Card was ineligible for these benefits beyond January 1, 2015, was not arbitrary and capricious. Even if Card was initially eligible for LTD and LCDD benefits, "no benefits will be continued beyond the end of the period for which the Member has provided [Principal] with satisfactory proof of loss," (AR at 155, PART IV, Section Q, Article 3C), and "[i]n no event, will benefits continue beyond . . . the date the Member fails to provide any required proof of Disability," (*id.* at 147, PART IV, Section M). Since Principal did not have any medical records or other proof of loss from Card beyond January 1, 2015, any benefits awarded to her would not extend past that date. Accordingly, Principal reasonably denied Card's LTD and LCDD claims to the extent that Card seeks disability benefits beyond January 1, 2015.

Principal's denial of Card's LTD and LCDD claims beyond January 1, 2015, was "the result of a deliberate, principled reasoning process." *Glenn*, 461 F.3d at 666. In is denial letter, Principal cited to the relevant provisions of the Plan and systematically outlined its

various requests for information from Card.  (DE 101-1 at 5-6.)  Principal explained how Card violated the Plan by failing to provide the requested information and denied her claims, in part, because of this violation.  (*Id.* at 6.)  Substantial evidence shows that Principal contacted Card five separate times for the information, and Card admits that she failed to submit the requested information.  (AR Suppl. at 1598, 1629, 1655-56, 1670; DE 136 at 17.)  The Court agrees with Principal's determination as it relates to Card's LTD and LCDD claims beyond January 1, 2015.  Therefore, to the extent that Card moves for judgment on those claims, the Court denies her motion.

Card raises several arguments to justify her failure to provide the requested information to Principal.  None of those arguments succeed.

First, Card contends that "[t]hroughout this case, Principal has argued ***the only relevant*** timeframe and information for Ms. Card's claims was from December 2013 through the elimination periods (e.g., March 2014)."  (DE 136 at 8 (emphasis in original).)  To support this argument, Card references a statement from Principal's appellate brief for the First Appeal.  (*Id.*)  The statement says, **in full**, "That must hold especially true when the objective evidence in Ms. Card's medical records identifies a Stage 0 disease process **at the time of her claim in December 2013 and during the following 90 day Elimination Period . . . the only relevant time period for Ms. Card's disability claims**."  (DE 100-2 at 2-3 (emphasis added).)  While that may have been Principal's argument upon its pre-remand review of Card's claims, the circumstances have changed since the Sixth Circuit first remanded Card's case.  Over five years passed between March 2014 (the ending date for the 90-day elimination period) and the Sixth Circuit's remand.  Ultimately, Principal's previous argument does not change the fact that, under the Plan, Card has the duty to continuously provide proof of her disability upon request.  Card did not fulfill that duty, and Principal reasonably denied her claims beyond January 1, 2015.

27

Card also relies on a statement in Principal's previous cross-motion for summary judgment: "When deciding if [Principal's] decision to deny benefits is arbitrary and capricious, the Court is **limited to the evidence** (and the arguments) that were **before [Principal] at the time of its decision**." (DE 136 at 8 (emphasis in original) (quoting DE 72 at 26).) That statement says nothing about the relevant timeframe for Principal's review of Card's claims. Rather, the statement relates to what evidence *the Court* may consider when reviewing Principal's determination.

Next, Card insists that Principal already had the medical evidence it needed in its possession. (DE 117 at 4.) Card cites to the May 7, 2020 denial letter, where Principal stated, "The records we had as of the LTD/LCDD accrual dates **and beyond** included . . . ." (*Id.* (emphasis in original) (quoting DE 101-1 at 2).) Card cherry picked this statement. The statement reads in full:

> The records we had as of the LTD/LCDD accrual dates and beyond included a letter from Dr. Baum dated September 26, 2014 regarding his recommended restrictions, office notes from Dr. Baum dated January 28, 2014 and May 28, 2014, office notes from Dr. Shell dated November 12, 2014 and December 9, 2014 and office notes from Dr. Donaldson dated December 5, 2014 and December 19, 2014.

(DE 101-1 at 2.) Notably, this statement does not indicate that Principal had any documentation beyond January 1, 2015, as necessary for Principal to determine if Card is and continues to be disabled under the Plan.

Card also argues that she provided Principal with a release to obtain her medical records. (DE 136 at 8-9.) According to Card, "Principal **already knew** who Ms. Card's treaters were during the relevant time period (i.e., Drs. Baum, Schell, Donaldson)" but "simply elected to not request **any medical records**." (*Id.* at 9 (emphasis in original).) While Card undisputedly signed the authorization for the release of her medical records (AR Suppl. at 1632-33), she admittedly failed to provide Principal with updated

28

contact information for her providers or otherwise confirm that her treating physicians remained the same after January 1, 2015 (DE 136 at 17).  Principal had no way of knowing if Card remained under the care of the same physicians five years later without her confirmation.  A plaintiff seeking benefits "bears the burden of proving by a preponderance of the evidence that she satisfies the terms of the Plan and qualifies for [the relevant] benefits." *Dening v. Aetna Life Ins. Co.*, Civil Action No. 5:21-221-DCR, 2022 WL 2706149, at *5 (E.D. Ky. July 12, 2022).  As such, the claims administrator is "not required to seek out evidence on its own." *Cassidy v. Aetna Life Ins. Co.*, Civil Case No. 6:19-cv-000201-GFVT, 2021 WL 1857297, at *3 (E.D. Ky. May 10, 2021).  By failing to provide the necessary evidence from her treating physicians, Card failed to meet her burden to prove that she qualified for benefits under the Plan.  Principal should not be penalized for failing to obtain the evidence that Card had the burden of submitting.  Accordingly, Principal reasonably denied her LTD and LCDD claims beyond January 1, 2015.

Card maintains that Principal "was ***not*** permitted to rely upon new evidence or new reasons to deny Ms. Card's LTD or LCDD benefits post-remand—it was restricted to the Sixth Circuit's mandate." (DE 117 at 4 (emphasis in original).)  Card does not point to any language within the Sixth Circuit's opinion or to any binding precedent limiting Principal's review in this way.  Instead, the Sixth Circuit's mandate seemingly compels the opposite. Citing *Elliott v. MetLife Ins. Co.* 473 F.3d 613, 621-22 (6th Cir. 2006), the Sixth Circuit explained that "[i]f a court concludes that an administrator acted arbitrarily and capriciously, it may either remand the case to the administrator for a *new review* or award benefits to the beneficiary." (DE 85 at 19 n.7 (emphasis added).)  The Court remanded the case for new review, implying that Principal could rely on new evidence or reasoning when assessing Card's claims.  (*Id.* at 2, 19.)  The Sixth Circuit remanded the case in lieu of automatically awarding Card benefits because it "[could not] say on the record that plaintiff is entitled to

short-term and/or long-term disability benefits." (*Id.* at 2.)  The record was not well developed enough for the Sixth Circuit to make any determinations regarding Card's eligibility, meaning that an expanded record was needed on remand.  The Sixth Circuit also found that "[r]emand [was] necessary because [Principal] failed in at least two stages of its benefits determination to account adequately for plaintiff's *actual* job duties."  (DE 85 at 19 (emphasis in original).)  To adequately account for Card's job duties, Principal would almost certainly need to look at new evidence or provide new reasoning in its revised determination. Throughout the opinion, the Sixth Circuit points to deficiencies in Principal's decision-making process.  (DE 85 at 14-20.)  The purpose of the mandate was for Principal to correct those errors, necessarily requiring Principal to provide additional reasoning for its determination.  Therefore, Principal's request for updated medical information from Card was entirely consistent with the Sixth Circuit's mandate.

For Principal to evaluate Card's claims for LTD and LCDD benefits beyond January 1, 2015, it first and foremost needed updated evidence from Card.  Because Principal could not assess Card's claims in the first instance due to her refusal to provide the requested information, any other argument that Principal's denial of those claims was arbitrary and capricious fails at the jump.  The Court denies Card's LTD and LCDD claims to the extent she seeks benefits beyond January 1, 2015.

## V.    Remedy

The Court must determine the appropriate remedy in light of its finding that Principal's denial of Card's LTD and LCDD claims through January 1, 2015, was arbitrary and capricious.  "In cases such as these, courts may either award benefits to the claimant or remand to the plan administrator."  *Elliott*, 473 F.3d at 621.  During the First Appeal, the Sixth Circuit remanded the case because it "[could not] say on the record that plaintiff is entitled to short term and/or longterm disability benefits."  (DE 85 at 2.)  As explained *supra*,

the record before this Court essentially remains the same because Card failed to submit additional evidence of her LTD and LCDD claims as requested, and Principal's denial of her claims through January 1, 2015, suffered from the same deficiencies as its previous denial. Based on the Sixth Circuit's initial mandate, the Court also finds that the appropriate remedy is a remand of those claims to Principal for a new review consistent with this opinion.

To the extent that Card seeks attorney's fees or any other relief in connection with her motion for judgment, she may seek those through a separately filed motion.

## VI.   Conclusion

The Court hereby ORDERS as follows:

1.    Defendant Principal Life Insurance Company's motion to alter and amend (DE 112) is DENIED;

2.    Defendant SHALL REMIT a payment of $47,635.00 in attorney's fees and $857.92 in costs to Plaintiff Susan Card within thirty (30) days of the entry date of this Opinion and Order;

3.    Plaintiff's motion for judgment (DE 117) is GRANTED in part and DENIED in part;

4.    Plaintiff's LTD and LCDD claims through January 1, 2015, are REMANDED to Defendant for a new determination consistent with this Opinion;

5.    The Department of Labor's regulations regarding the deadlines for the processing of ERISA claims (29 C.F.R. § 2560.503-1) SHALL GOVERN the timing of Defendant's new determination; and

6.    The Court will enter a judgment contemporaneously with this Order.

This 5th day of September, 2023.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY